**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis William GROESSEL, Defendant-Appellant.**

**No. 29848.**

United States Court of Appeals,
Fifth Circuit.

March 26, 1971.

Certiorari Denied June 21, 1971.
See 91 S.Ct. 2263.

Gerald B. Shifrin, El Paso, Tex., for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Wayne F. Speck, Jeremiah Handy, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

Groessel appeals from a judgment entered upon a jury conviction of conspiracy to transport and to cause to be transported in foreign commerce three stolen trucks in violation of 18 U.S.C.A. § 371. Groessel's main points on appeal are that the District Court erred in denying a motion to dismiss the indictment for want of federal jurisdiction, in denying a motion for acquittal based on entrapment as a matter of law, and in failing to properly charge the jury on the issue of entrapment. We affirm.

On September 21, 1969, Clark, an acquaintance of Groessel, contacted Adame, a government informer and former husband of Clark's wife, and told Adame that he knew two persons who had several trucks ready for sale and who wanted a buyer from Mexico. Clark asked Adame to introduce to these two persons any prospective buyer known to him. On September 24, Adame informed FBI agents about his conversation with Clark.

Adame first met Groessel and co-defendant Husted (the two persons to whom Clark had referred) at Clark's house on September 28. Adame went to Clark's house to visit Adame's children, who were in his ex-wife's custody. While at Clark's house, Groessel and Husted arrived. Groessel initiated a conversation concerning the possibility of selling stolen trucks to a Mexican buyer, and asked Adame to assist them in locating a buyer. The next day Adame recontacted the FBI.

Two days later FBI agent Ellison asked government informer Ajzen, a Mexican citizen, to come to El Paso and pose as a prospective buyer of the trucks. That same day Adame met Groessel and other co-defendants at Clark's house. At this meeting Groessel emphasized his desire to sell the trucks as soon as possible. The following day Adame again contacted the FBI.

On October 6, Ajzen arrived in El Paso, where he met Adame and agent Ellison. The next day Ajzen checked into a local hotel. That afternoon Groessel and Husted met Ajzen and Adame at the hotel and offered to sell Ajzen three Peterbilt trucks. After considerable discussion they agreed on a total price of $36,000. Ajzen displayed to Groessel and Husted a "customer's memorandum cashier's check" in the amount of $36,000. The memorandum, procured by FBI agents, had been given to Ajzen so that defendants would believe Ajzen had access to that amount of cash. Finally Groessel and Husted agreed to deliver the trucks to Ajzen that night at McLain's Truck Stop in El Paso.

Suspecting that the trucks to be delivered might be on the lot of an El Paso truck dealer, the FBI posted a lookout near the lot with instructions to undertake surveillance of an area where new trucks, including the type to be delivered, were kept. A few minutes later Groessel and other co-defendants arrived on the lot, started three trucks' engines, and drove the trucks away. Meanwhile, the surveillant was in communication with other FBI agents awaiting delivery of the trucks at the truck stop. Agents along a highway near the rendezvous point saw the three trucks pass. The agents then followed them to the truck stop and arrested three of the defendants, including Groessel, who had been driving one of the trucks.

■■ Groessel's first argument—that the trial court erred in failing to dismiss the indictment for want of federal jurisdiction since the only element involving foreign commerce was supplied by FBI telephone calls to its agent in Mexico—gives us little pause. There was ample evidence that Groessel was involved in a conspiracy to sell stolen

trucks to someone in El Paso to be transported to Mexico. It is not necessary to prove a defendant performed some overt act *in* foreign commerce to establish a conspiracy to transport stolen vehicles in foreign commerce. *See* Beeler v. United States, 5 Cir. 1953, 205 F.2d 454, cert. denied, 346 U.S. 877, 74 S.Ct. 130, 98 L.Ed. 385. "Conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object." Braverman v. United States, 1942, 317 U.S. 49, 54, 63 S. Ct. 99, 102, 87 L.Ed. 23.

Groessel next argues that the trial court erred in denying his motion for judgment of acquittal based on entrapment as a matter of law. He maintains that had he not met Adame, and had the Government not supplied the buyer Ajzen and provided Ajzen with the $36,-000 memorandum, he would never have agreed to the transaction with Ajzen. Groessel further insists that beginning on September 24, 1969, when Adame first contacted the FBI the Government's direction and supervision of Adame's and Ajzen's activities were of a "creative nature," since government control began at a time when Groessel had committed no crime.

■■■ At the threshold, the Government asserts that Groessel was not entitled to raise the defense of entrapment. This position is clearly without merit. Ordinarily the defense is not available where the defendant denies the very acts upon which the prosecution is predicated. Such a denial is inconsistent with the defense, which assumes that the act charged was committed. Rodriguez v. United States, 5 Cir. 1955, 227 F.2d 912, 914; accord, Marko v. United States, 5 Cir. 1963, 314 F.2d 595, 597–598; *see* United States v. Pickle, 5 Cir. 1970, 424 F.2d 528. Groessel, however, chose not to testify; therefore, no evidence inconsistent with the defense of entrapment was introduced. Of course a plea of not guilty is not repugnant to the defense of entrapment. Suarez v. United States, 5 Cir. 1962, 309 F.2d 709, 712. United States v. Crowe, 5 Cir. 1970, 430 F.2d 670, upon which the Government relies to substantiate its contention, is inapposite because Crowe denied on the stand that he participated in the acts alleged. Groessel has not made such a denial here.

■■■ Entrapment occurs only when criminal conduct is the product of the creative activity of government officials.[1] The criminal design must originate with a government official or one acting at his direction in implanting in an innocent person's mind the disposition to commit the crime. Sherman v. United States, 1958, 356 U.S. 369, 372, 78 S. Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 1932, 287 U.S. 435, 441–442, 53 S.Ct. 210, 77 L.Ed. 413; Eisenhardt v. United States, 5 Cir. 1969, 406 F.2d 449, 451. The defense of entrapment rests on the theory that a defendant is not culpable where government officials instigated his conduct. Sears v. United States, 5 Cir. 1965, 343 F.2d 139, 144.

■■■ There is no entrapment, however, if the accused is ready and willing to commit the crime whenever the opportunity might be afforded—even if by government agents or informers acting under their supervision. Eisenhardt v. United States, *supra,* 406 F.2d at 451. It is well settled that the fact that government agents merely furnish opportunities or facilities for committing the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. Osborn v. United States, 1966, 385 U.S. 323, 331–332, 87 S.Ct. 429, 17 L.Ed.2d 394; Sorrells v. United States, supra, 287 U.S. at 441, 53 S.Ct. 210, 77 L.Ed. 413; Pierce v.

---

1. Entrapment need not depend on acts of inducement by government officials. It can also occur as a result of the efforts of informers who are merely private citizens but acting under government direction. Sherman v. United States, 1958, 356 U.S. 369, 373–374, 78 S.Ct. 819, 2 L.Ed.2d 848.

United States, 5 Cir. 1969, 414 F.2d 163, 165, cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425. Thus the fact that the Government afforded Groessel with a buyer who could ostensibly meet Groessel's price, is not proof that his participation in the conspiracy was a product of the creative activity of the Government, or that he was seduced by Adame or Ajzen who allegedly overcame his resistance. *Compare* Sherman v. United States, supra, 356 U.S. at 372–373, 384, 78 S.Ct. 819, 2 L.Ed.2d 848, with Pierce v. United States, supra, 414 F.2d at 165–168.

■■■■ This is not a case where the defendant initially refused a government agent's offer to participate in, or avoided discussion of, a proposed illegal transaction. E. g., Sherman v. United States, *supra,* 356 U.S. at 371, 78 S.Ct. 819, 2 L.Ed.2d 848. On the contrary, Groessel initiated discussion concerning the sale. In *Pierce* this Court stated that even when a government agent initiated a conversation concerning a criminal transaction and persisted in pursuing the subject over a considerable period of time, "creative activity" on the part of the Government had not been established. Pierce v. United States, supra, 414 F.2d at 165, 168–169. Yet there was sufficient evidence of entrapment to submit the issue to the jury. Apparently Groessel, a fireman employed by the City of El Paso, enjoyed an unblemished reputation as an honest, law-abiding citizen. Moreover, before Adame met Groessel, FBI agents instructed Adame to "go right ahead." It was for a jury to determine the import of these instructions and how they were to be and were carried out in connection with Groessel. Of course, evidence that FBI agents had knowledge of possible criminal activities before Adame approached Groessel does not prove entrapment as a matter of law. *Cf.* Kivette v. United States, 5 Cir. 1956, 230 F.2d 749, 754, cert. denied, 1958, 355 U.S. 935, 78 S.Ct. 419, 2 L.Ed.2d 418. Nor is it important that the Government sets the stage and provides the aid, incentive, and opportunity for commission of the crime unless it appears that the defendant has done that which he would never have done had it not been for the encouragement of government agents or informers. See Rodriguez v. United States, *supra,* 227 F.2d at 914.

■■■■ The initial burden was on Groessel to go forward with some evidence, but more than a scintilla, that Adame or Ajzen induced him to commit the offense. Pierce v. United States, *supra,* 414 F.2d at 166. This "burden of going forward" is not to be confused with the "burden of proof," sometimes referred to as the "risk of nonpersuasion." If a defendant fails to carry the burden on the issue of entrapment forward, he is not entitled to submission of the issue to a jury. On the other hand, if the defendant introduces overwhelming evidence of entrapment, the burden of going forward shifts to the Government. If the Government then fails to carry the burden forward, the defendant, having established entrapment as a matter of law, is entitled to a judgment of acquittal. The "burden of proof" with respect to entrapment, however, is always on the Government; it never shifts. *See,* C. Wright, Federal Practice and Procedure, § 403, at 70–73 (1969).

■■■■ Since the record here contains evidence which, if believed by the jury, would have shown that the Government's conduct created a substantial risk that Groessel conspired to transport, or to cause to be transported, trucks in foreign commerce when he was not otherwise predisposed to do so, the District Judge properly submitted the entrapment issue to the jury. See Pierce v. United States, supra, 414 F.2d at 168. However, while the entrapment evidence in the case *sub judice* sufficed to take the issue to the jury, it was not so overwhelming that it was "patently clear" or "obvious" that Groessel was entrapped as a matter of law. Sherman v. United States, *supra,* 356 U.S. at 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (undisputed testimony of government agent); Unit-

ed States v. Marcello, 5 Cir. 1970, 423 F.2d 993, 1011, cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 ("obvious"); Henderson v. United States, 5 Cir. 1958, 261 F.2d 909, 912 ("patently clear"). Therefore, the District Judge properly denied Groessel's motion for acquittal. Osborn v. United States, supra, 385 U.S. at 331, 87 S.Ct. 429, 17 L.Ed. 2d 394; Masciale v. United States, 1958, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed. 2d 859; Sherman v. United States, supra, 356 U.S. at 377, 78 S.Ct. 819, 2 L. Ed.2d 848; Eisenhardt v. United States, supra, 406 F.2d at 450–451; United States v. Thompson, 6 Cir. 1966, 366 F. 2d 167, 173–175, cert. denied sub nom. Campbell v. United States, 385 U.S. 973, 87 S.Ct. 512, 17 L.Ed.2d 436; Suarez v. United States, supra, 309 F.2d at 711; Badon v. United States, 5 Cir. 1959, 269 F.2d 75, 80, cert. denied, 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152; Lathem v. United States, 5 Cir. 1958, 259 F.2d 393, 396; Kivette v. United States, supra, 230 F.2d at 754.

■ Groessel also urges that the trial judge committed reversible error in improperly instructing the jury on the issue of entrapment. First, he argues that the court failed to place the burden of proof on the Government. An examination of the charge, however, shows clearly how very carefully the judge correctly spelled out to the jury the principle of entrapment and the fact that it had to be disproven beyond a reasonable doubt. This Court has previously approved similar charges on entrapment. E. g., Eisenhardt v. United States, supra, 406 F.2d at 451 & n. 4; Demos v. United States, 5 Cir. 1953, 205 F.2d 596, 599–600 & n. 3, cert. denied, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 382. Groessel's reliance on Notaro v. United States, 9 Cir. 1966, 363 F.2d 169, and United States v. Pugliese, 2 Cir. 1965,

346 F.2d 861, is misplaced. In *Notaro* the trial judge failed to delineate for the jury which party had the burden of proof and omitted from the charge the proper standard of proof. 363 F.2d at 175–176. In *Pugliese* the trial judge charged, in effect, that the defendant bore the burden of "proof beyond a reasonable doubt." 346 F.2d at 863. In the instant case, the trial judge properly instructed the jury concerning the standard of proof and properly placed the burden of proof on the Government.

■ Second, Groessel maintains that the trial judge's charge that "the question is whether a defendant is a strayed lamb or an ensnared wolf" is tantamount to an instruction that there are two types of entrapment—lawful and unlawful. We recognize that utilization of such terms as "lawful entrapment" and "unlawful entrapment" in a jury instruction is confusing and, perhaps, erroneous. *See* Martinez v. United States, 10 Cir. 1967, 373 F.2d 810, 812; Garcia v. United States, 10 Cir. 1967, 373 F.2d 806, 809; United States v. Pugliese, *supra*, 346 F.2d at 864–865. However, Groessel's interpretation of the charge in this respect is untenable. The "lamb-wolf" expression[2] is no more than a metaphorized modification of the announcement in *Sherman* that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." 356 U.S. at 372, 78 S.Ct. at 821, 2 L.Ed.2d 848; accord, Suarez v. United States, supra, 309 F.2d at 711; Accardi v. United States, 5 Cir. 1958, 257 F.2d 168, 171, cert. denied, 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112. There was no error in the court's charge on entrapment.

The other matters urged by Groessel have been considered and are without merit.

Affirmed.

2. See Model Penal Code at 21 (Tent. Draft No. 9); Pierce v. United States, *supra*, 414 F.2d at 166 n. 6. *See also* Donnelly, "Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs," 60 Yale L.J. 1091, 1098–1115 (1951).