Appellant was convicted of selling cyclohexamine in violation of the Alabama Uniform Controlled Substances Act (Code 1975, §20-2-1, et seq.). He was sentenced to imprisonment for fifteen years.
The principal contest on appeal is as to the availability to defendant of the defense of entrapment.
Three witnesses testified on call of the State. Only one testified as to the sale. The combined testimony of the other two showed that the product sold was cyclohexamine.
Defendant did not take the stand. No witness in his behalf testified as to a sale. The evidence for the defendant was limited largely to testimony as to his character or reputation.
As the chief issue on appeal hinges on the testimony of the only witness as to a sale, we endeavor hereby to summarize his testimony. He was Mr. Donald S. Williams, an agent of Alabama Beverage Control Board, Alcohol and Narcotic Enforcement Division, engaged in undercover work.
According to the testimony of Mr. Williams, about 5:50 P.M. on Friday, August 18, 1978, at Room 118, Holiday Inn East, Montgomery, he purchased from defendant approximately one ounce of cyclohexamine and paid defendant therefor eleven hundred dollars. He also gave defendant the sum of one hundred dollars to pay him for his plane fare to Montgomery from where defendant lived in Oklahoma. The particular transaction was in the presence of Charles Gates, a resident of Elmore County, a "confidential informant" working with Mr. Williams and other agents at the time, whom Mr. Williams had known for about six weeks and who Mr. Williams understood had been guilty of violations of Controlled Substances Act, had been charged therewith and was working with the authorities in accordance with an understanding that he might be placed on probation for his offenses. Gates was being paid his expenses from public funds, and had been paid therefrom by Mr. Williams the sum of fifty dollars with which to pay for a room (Room 118) at the Holiday Inn to be occupied by defendant.
The witness did not know defendant until the afternoon of the sale. About the middle *Page 136 
of the afternoon Mr. Gates, in a State automobile assigned to Mr. Williams, drove Mr. Williams to a house or apartment on Fifth Street in Montgomery, left him there, went to the airport to pick up defendant and returned with defendant in about thirty minutes. He drove into the driveway of the house or apartment where Mr. Williams had been left. The horn of the automobile was blown, and Mr. Williams came to it, was introduced to defendant by Mr. Gates and rode with them to the Holiday Inn. They went to a lounge before going to Room 118; each had a drink, and about 5:30 P.M. the three went to Room 118.
There is no evidence as to what transpired between Gates and defendant prior to the time Williams met them on Fifth Street and went with them to the Holiday Inn, but it seems clear and undisputed that whatever arrangements were made for defendant to come from his home in Oklahoma to Montgomery, Alabama, were made between Gates and defendant. Gates did not testify in the case. Before the trial commenced and before a jury was selected to try the case, counsel for defendant made it known to the court that he had requested a subpoena for Charles Gates. Thereupon a lengthy colloquy among counsel, the court and others transpired relative to the whereabouts of Gates, and it was made known to the court that his whereabouts was not known by the State, its attorneys or agents then in court of the Alabama Beverage Control Board, and he was no longer a confidential informer of the State. At the conclusion of the colloquy and just before the jury was selected, defendant moved for a continuance "so that we could have an opportunity to locate Mr. Charles Gates." The motion was overruled.
At the conclusion of the evidence for the State, defendant moved for an exclusion of the evidence. The record shows:
"THE COURT: All right. I will hear your Motion.
 "MR. SMITH: Judge, we move to exclude the State's evidence on the first ground of entrapment. I think under the evidence, without dispute, the Court knows as a fact — and based upon the evidence of ABC Agent Don Williams — that the plan or the scheme or the design to purchase the drug which is mentioned in the indictment originated with the enforcement officer. And we think for that reason that the State's evidence should be excluded.
"THE COURT: Do you want to respond, Mr. Chandler?
 "MR. CHANDLER: Yes, sir. It is my understanding, Mr. Smith, that you are pleading entrapment?
"MR. SMITH: I said on the grounds of entrapment.
 "MR. CHANDLER: Does that constitute a plea of entrapment?
"MR. SMITH: You don't plead entrapment.
 "MR. CHANDLER: I beg to differ with you. It is a special plea you are allowed under the rules of evidence for defense of a case, as you well know.
"THE COURT: All right.
 "MR. CHANDLER: I submit there is. And if the Defendant chooses to plead entrapment he acquiesces that the offense took place and his only defense is that he was trapped into doing it and he is estopped from putting on any evidence to the contrary.
 "MR. SMITH: Entrapment is not a special plea, we submit to the Court.
"THE COURT: All right. Any more argument on it?
"MR. SMITH: No, sir.
 "THE COURT: I don't feel that that plea is available here. Assuming for a moment that it was timely raised. So, I will deny your Motion on that ground.
"MR. SMITH: We except."
When defendant rested, the jury was excused to go to the jury room and the following occurred:
 "THE COURT: All right. Let's talk about the closing arguments for a moment.
 "I believe all your requested charges are going to be amply covered in my oral charge. Let's get to a more important matter. *Page 137 
 "Under McCarroll vs. State, the defense of entrapment is not available if you deny the charge. That is what I thought would be the law.
"Do you intend to try to argue entrapment?
 "MR. CULPEPPER: Judge, it is so intermingled with the credibility of Don Williams and Charles Gates . . . Now we don't plan to just come out and use that word, but I think we are entitled, in attacking the credibility of the witnesses who say he did this, to talk about the circumstances under which it was supposedly done. And that will lead us to make such statements as, Gates told Marvin to come here to do that, and that sort of thing. Now —
"THE COURT: Are you pleading entrapment or not?
 "MR. SMITH: Judge, we don't have to plead entrapment as I understand it.
 "THE COURT: Well, you can't have the best of both worlds. You have either got to admit that he sold it and plead entrapment, as I read the law, or either you have got to deny that he sold it and take —
 "MR. CULPEPPER: Are you saying we have got to stand up before the jury and say that we acknowledge that he —
 "THE COURT: If you want the benefit of the defense of entrapment you do.
 "MR. SMITH: Wouldn't that be proper for the Court to instruct the jury?
 "THE COURT: I don't intend to instruct the jury on entrapment, is what I am getting to. That is why we need to talk about the argument.
". . . .
 "MR. SMITH: Judge, so that the record will be clear: We have asked the Court to include in your instructions the proper instructions on the defense of entrapment, and Your Honor has declined to do that.
 "THE COURT: Yes, sir. And if I'm not going to charge on it you can't argue it.
 "MR. CULPEPPER: Judge, we also have a requested instruction we want to offer at this time on entrapment.
 "THE COURT: All right. I am going to deny your requested charge."
Defendant's requested charge, which the court refused, on the subject of entrapment was as follows:
 "I charge you that where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such case.
 "On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment. "If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as are charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.
 "On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty."
Notwithstanding testimony by Mr. Williams as to what may be considered as instructions to Mr. Gates as to what he should tell the defendant in making arrangements for him to come to Montgomery from Oklahoma to make a sale of a controlled substance, we cannot assume that Mr. Gates followed such instructions punctiliously. Mr. Williams was an agent with many years of experience in undercover work. His answers to questions propounded him on cross-examination, as well as direct examination, disclose a commendable *Page 138 
awareness of the distinction between an inducement that does not constitute an entrapment and conduct that does constitute the same. This, however, does not force a conclusion that a non-expert in such field, a suspected felon such as Gates, could or would bring about a transaction such as the one taking place in Room 118 of the Holiday Inn with the same scrupulous and rigid adherence to propriety as would be expected of Mr. Williams.
In holding that the defense of entrapment was not available to defendant, the trial court relied upon McCarroll v. State,294 Ala. 87, 312 So.2d 382 (1975), by stating:
 "Under McCarroll v. State, the defense of entrapment is not available if you deny the charge. That is what I thought would be the law."
The statement of the trial court is supported by what was stated in McCarroll, at 312 So.2d 383:
 "The defense of entrapment is not available to a defendant who denies that he committed the offense charged. Rodriquez v. United States, 227 F.2d 912
(1955, CA 5th Cir., Texas). . . ."
We gladly acknowledge the authority of what was held inMcCarroll. We fail to find, however, in the record in the instant case, support for the proposition that defendant deniedthe charge. In holding in McCarroll, supra, that defendant therein denied the charge, the court specifically set forth such denial by defendant as follows:
 "Here McCarroll denied he sold heroin, the offense with which he was charged, to the State agent. He admitted he sold capsules to the agent, which he contends contained wholewheat flour."
312 So.2d at 383
The opinion in McCarroll, supra, indicates, if it does not conclusively show, that defendant took the stand on the trial of the case and in his testimony denied that he had sold a controlled substance. It is also to be observed that in cases cited in McCarroll in support of the proposition quoted therefrom above, including Rodriquez v. United States, supra,State v. Varnon, 174 S.W.2d 146 (Mo., 1943) and State v. Egan,272 S.W.2d 719 (Mo.App., 1954), the defendant in each case took the stand and denied the charge. Furthermore, the same court that decided Rodriquez v. United States, supra, subsequently held in United States v. Groessel, 440 F.2d 602, 605 (5th Cir. 1971), as follows:
 "At the threshold, the Government asserts that Groessel was not entitled to raise the defense of entrapment. This position is clearly without merit. Ordinarily the defense is not available where the defendant denies the very acts upon which the prosecution is predicated. Such a denial is inconsistent with the defense, which assumes that the act charged was committed.
 "Rodriquez v. United States, 5 Cir. 1955, 227 F.2d 912, 914; Accord, Marko v. United States, 5 Cir. 1963, 314 F.2d 595, 597-598; see United States v. Pickle, 5 Cir. 1970, 424 F.2d 528. Groessel, however, chose not to testify; therefore, no evidence inconsistent with the defense of entrapment was introduced. Of course a plea of not guilty is not repugnant to the defense of entrapment. Suarez v. United States, 5 Cir. 1962, 309 F.2d 709, 712. United States v. Crowe, 5 Cir. 1970, 430 F.2d 670, upon which the Government relies to substantiate its contention, is inapposite because Crowe denied on the stand that he participated in the acts alleged. Groessel has not made such a denial here."
Neither McCarroll nor any other authority that has been brought to our attention furnishes support for the ruling of the trial court that defendant had denied the charge and for that reason the defense of entrapment was not available to him. We conclude that reason and authority are to the contrary. To hold otherwise would denigrate the established right of a defendant in a criminal case to plead not guilty and his enshrined right not to be compelled to give evidence against himself. He has the right, and his lawyer may ofttimes find himself under a duty, to make no admission, to make no stipulation, to make no concession, that would tend to aid the prosecution *Page 139 
in discharging the burden that is upon it to prove the defendant's guilt.
We wish to make it clear that in emphasizing the fact that defendant did not testify as a significant factor in distinguishing this case from McCarroll, supra, and other cases, we refrain from making any projection as to whether or when there could be such extraordinary circumstances that would not preclude the availability of the defense of entrapment to a defendant even though he had testified in the case and in some sense at least had denied the charge. See, United States v. Greenfield,554 F.2d 179 (5th Cir. 1977), in which the alleged offense took place in the same city (Montgomery, Alabama) as the one in the instant case.
As it seems so clear that the trial court's ruling was based exclusively on its conclusion that the defense of entrapment was not available to defendant by reason of his denial of the charge or his failure to admit the charge and that but for that reason the trial court would have charged the jury on the subject of entrapment, permitted defendant's attorney to argue the defense and probably have given defendant's requested written charge on the subject, it seems unnecessary to discuss the question whether there was sufficient evidence in the case to justify a submission to the jury of the defense of entrapment. Nevertheless, we will do so.
The distinction between an inducement that entraps and an inducement that merely detects has been variously stated in multitudinous instances. We accept the following as satisfactory and attractively succinct:
 "One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of `entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by the one who had the requisite criminal intent." 22 C.J.S. Criminal Law § 45 (2)
A valuable discussion of applications of the distinction is furnished by Judge Bowen in Tyson v. State, Ala.Cr.App.,361 So.2d 1182, in which it is stated at 1186,
 "The primary focus is on a predisposition of the accused rather than on the agent's actions."
Also on page 1186, on the question of the "proper allocation of the burden of proof in trying a case in which entrapment is claimed," is the following approved quotation from United Statesv. Dickens, 524 F.2d 441, 444 (5th Cir. 1976):
 "The defendant must first come forward with evidence sufficient to raise a jury issue `hat the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it'. United States v. Mosley, 496 F.2d 1012, 1014 (5th Cir. 1974) citing Pierce v. United States, 414 F.2d 163, 168 (5th Cir. 1969). Once such issue is raised, the Government must prove beyond a reasonable doubt that the Defendant was predisposed to commit the charged offense. Id. See also, United States v. Gomez-Rojas, 507 F.2d 1213, 1218 (5th Cir. 1975). By relying on entrapment as a defense, an accused exposes himself to a `searching inquiry into his own conduct and predisposition . . .' Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). To negative the defense, the government may introduce evidence to prove predisposition which is otherwise inadmissible. United States v. Moriarty, 497 F.2d 486, 488 (5th Cir. 1974); United States v. Simon, 488 F.2d 133 (5th Cir. 1973)."
Although it is clear and undisputed that defendant was in some way contacted by Gates as a confidential informer working with an undercover agent of the prosecution and caused to come to Montgomery, each party for reason of his (its) own has elected to close the curtain to a view by anyone else of the question of any "predisposition of the accused." Although we can *Page 140 
glean from the record some suggestion of a predisposition, there is no actual evidence to that effect. It can also be said that there is some suggestion to the effect that there was no predisposition, but as to that also there is no evidence. On that axial question there is little but "darkness upon the face of the deep."
Although it is conceivable, if all the facts bearing on the question were shown in evidence, that it could be said as a matter of law whether there was an entrapment, this cannot be said on a consideration of the evidence on the trial of the case. Not being determinable either way as a matter of law, it became a question for the jury to decide under proper instructions by the court. In view of the action of the court in ruling that there was no issue for the jury to decide on the question of entrapment, declining to allow attorneys for defendant to argue to the jury the matter of the question of entrapment, and refusing the charge requested by defendant on the subject on the sole ground that no jury question as to entrapment was presented and that on the ground that the defense of entrapment was not available to defendant, we must find that such action constituted error prejudicial to defendant and that the judgment of the trial court should be reversed and the cause remanded.
In view of this determination it becomes unnecessary for us to decide the only other question on appeal, that is, whether the imposition of sentence by a judge other than the judge trying the case, over the objection of defendant, impaired the sentence under the circumstances shown by the record.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.