# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00285-CR

**Alexander Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT NO. 5260, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## O P I N I O N

Appellant Alexander Hernandez appeals his conviction for possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West 2003). He pleaded guilty to this offense after the trial court denied his motion to dismiss. In this appeal, we must consider various aspects of the entrapment defense. *See* Tex. Pen. Code Ann. § 8.06 (West 2003). For the reasons stated below, we reverse the judgment of conviction and order the prosecution dismissed with prejudice.

### BACKGROUND

On February 14, 2002, Felicia Fox, a confidential informant for the "Narcotics Enforcement Team" (NET) of San Saba law enforcement, asked appellant to come to her mobile

home to light her heater. While appellant was at Fox's home, NET Sergeants Simler and Byler received a telephone call from Fox. At that time, they were at a gas station about five minutes by car from Fox's home. As a result of the telephone conversation, they approached and entered the home. Simler found appellant in the bedroom of the home with a packet of methamphetamine powder in the front "change" pocket of his jeans and arrested him.

Appellant was subsequently indicted for possession of methamphetamine with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(c) (West 2003). At a pretrial hearing, the trial court granted appellant's motion requiring the State to disclose the identity of the confidential informant involved. He also filed a motion to consider pretrial the matter of entrapment. *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1(9) (West 1989). He then entered an agreement with the State, in which he would present his entrapment defense at a pretrial hearing as part of a motion to dismiss the charges rather than during the course of a trial. If the court denied his pretrial motion to dismiss, he agreed to plead guilty to the lesser included offense of possession of methamphetamine in the amount of less than four grams but more than one gram. *See id*. § 481.115(c). As part of his plea agreement, appellant preserved the right to appeal.

The trial court held a pretrial hearing on the merits of the motion to dismiss. On the basis of appellant's testimony, the trial court concluded that appellant had produced evidence sufficient to establish a *prima facie* entrapment defense. At the conclusion of the hearing, the trial court denied his motion to dismiss the charges. Subsequently, appellant pleaded guilty to the lesser-included possession offense, and the trial court sentenced him to five years' imprisonment, probated for five years. This appeal followed.

**DISCUSSION**

Appellant argues one issue on appeal—that the State did not meet its burden to disprove his entrapment defense beyond a reasonable doubt.

### *Entrapment Defense*

Under Texas law, entrapment occurs when a person engages in the conduct charged because "he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense." Tex. Pen. Code Ann. § 8.06(a) (West 2003). It is a defense to prosecution for the charged conduct. *Id*. The entrapment defense functions "to police the boundaries between government and the individual" in the context of the modern state. Rebecca Roiphe, *The Serpent Beguiled Me: A History of the Entrapment Defense*, 33 Seton Hall L. Rev. 257, 259 (2003). Although it originated in common-law contract principles of consent, its modern expression focuses on protecting the free will of the citizen against the manipulative power of the state. *Id*. at 278-79, 284. In other words, the entrapment defense expresses public policy condemning "the implanting of the germ of criminality, no matter how favorable the culture." *Id*. at 284 (quoting *State v. Jarvis*, 143 S.E. 235, 236 (W. Va. 1928)).

In Texas law, the inducement element of the defense has both subjective and objective aspects. *See England v. State*, 887 S.W.2d 902, 909 (Tex. Crim. App. 1994). First, the defendant must show that he was actually induced to commit the charged offense. *Id*. Second, he must show the influence by law enforcement would cause an ordinary citizen with average resistance to commit the offense. *Id*. The issue of entrapment is not raised where the facts indicate that the criminal design originated only in the mind of the accused and law enforcement merely furnished

3

the opportunity or aided the accused in the commission of the crime. *Lopez v. State*, 574 S.W.2d 563, 565 (Tex. Crim. App. 1978). Rather, inducement implies that the law enforcement agent manipulated the defendant and overcame his resistance. *See United States v. Groessel*, 440 F.2d 602, 606 (5th Cir. 1971).

The defense of entrapment is not available to a defendant who *denies* the acts upon which the prosecution is predicated. *Norman v. State*, 588 S.W.2d 340, 345 (Tex. Crim. App. 1979); *Warren v. State*, 565 S.W.2d 931, 933 (Tex. Crim. App.1978) ("defense of entrapment necessarily assumes that the act charged was committed"); *Zamora v. State*, 508 S.W.2d 819, 822 (Tex. Crim. App. 1974) (entrapment defense unavailable when appellant claimed he lacked knowledge of presence of marihuana in vehicle in which he was passenger); *see also Groessel*, 440 F.2d at 605. However, a defendant may plead not guilty and still raise the entrapment defense. *Norman*, 588 S.W.2d at 345. In addition, a defendant who does not take the stand or who does not offer any testimony inconsistent with the commission of the crime would still be entitled to offer a defense of entrapment. *Id.*; *see also Groessel*, 440 F.2d at 605. Thus, the defendant is not required to admit the commission of the offense as charged.

### Standard of Review

A defendant is entitled to a pretrial determination of entrapment, at which he has the burden of producing evidence to establish a *prima facie* showing of such a defense. Tex. Code Crim. Proc. Ann. art. 28.01, § 1(9); *Richardson v. State*, 622 S.W.2d 852, 856 (Tex. Crim. App. 1981); *see also Groessel*, 440 F.2d at 606 (describing defendant's burden as "burden of going forward" rather than "burden of persuasion"). The testimony of the defendant alone may be sufficient to establish

4

a *prima facie* case.  *See Richardson*, 622 S.W.2d at 856; *Garcia v. State*, 528 S.W.2d 604, 605 (Tex. Crim. App. 1975); *see also United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979) (describing requirement in federal law of showing of "some evidence" and holding even absence of defendant's testimony not fatal to federal entrapment defense).  After a defendant has met this initial burden, the State bears the burden of persuasion to disprove entrapment beyond a reasonable doubt.  *England*, 887 S.W.2d at 908; *State v. Taylor*, 886 S.W.2d 262, 265 (Tex. Crim. App. 1995).

When conflicting evidence exists on the issue of entrapment, the trial court, as the trier of fact, must weigh the evidence and determine whether the defendant was entrapped as a matter of law.  *Soto v. State*, 681 S.W.2d 602, 604 (Tex. Crim. App. 1984); *Bush v. State*, 611 S.W.2d 428, 430-31 (Tex. Crim. App. 1980).  On review, the issue of entrapment centers on the legal sufficiency of the evidence.  *See Torres v. State*, 980 S.W.2d 873, 875 (Tex. App.—San Antonio 1998, no pet.). In determining whether evidence is legally sufficient, we must view the evidence in the light most favorable to the judgment and determine whether any rational trier of fact could have found against the appellant on the issue of the defense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 15 (Tex. Crim. App. 2000); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)).

*Evidence*

At the pretrial hearing, it was established that, prior to the alleged offense, appellant had been convicted at separate trials for at least four offenses—possession of methamphetamine, possession of marihuana, unlawful carrying of a weapon, and criminal nonsupport.  He had recently

been released from the custody of the Texas Department of Criminal Justice and was living in San Saba. He was working and was also beginning a series of supervised visits with his children.

According to appellant's uncontested testimony, in mid-January 2002 Fox moved into a mobile home about a block and a half from a house owned by appellant's mother. He first met Fox soon thereafter when she walked over to the house to visit. About a week later, she came by the house when appellant was there with a friend. She performed oral sex on both of them. Afterwards, as they sat drinking, Fox asked them if they could find drugs for her. That visit did not result in drug use by any of the parties.

During the next month, almost every day Fox would ask appellant to "score drugs" for her. She was usually asking for methamphetamine. On February 14, appellant arrived at his mother's house in the mid-afternoon. It was a cold day, and Fox ran up to the house "looking pretty messed up on something." She said that the gas company had turned off the gas at her home and that she needed appellant to come over to light the heater. He agreed to help.

Upon arriving at Fox's home, appellant attempted to light the heater.[1] At that time, Fox approached appellant, "started kind of fondling" him, and asked him if he wanted to have sex. After a brief conversation,[2] Fox stated that she wanted to buy beer and asked appellant for money. He gave her money, and she left to buy the beer. When Fox returned, she produced two syringes and

---

[1] He also testified that Fox needed some other help, such as moving her bed away from the window.

[2] This conversation concerned the fact that Fox had ended a relationship with one of appellant's friends that day and that appellant was not certain he wanted to have sex with her.

6

"some dope."[3]  She prepared the drugs, mixing the powder with water and putting it in a spoon to "break it down."  After they both injected the drugs, Fox went to take a shower and left the drugs and the syringes on the bed.  When she returned, she performed oral sex on appellant.  In the middle of the sexual encounter, he heard the noise of someone attempting to enter the home.  Fox appeared surprised at the noise, exclaimed "oh God, oh, God," and told appellant to stay in the bedroom.  Appellant started to put his pants on.  Fox grabbed the drugs, which at that point were contained in two baggies, and put them in appellant's pants pocket.  She told him to keep the drugs for her and she said that they would finish having sex after the people at the door left.  She then left the bedroom, taking the syringes with her.  Sergeants Simler and Byler entered the bedroom moments later and asked, "Where's the dope?"  Appellant denied having any.  One of the officers then went back to the front room, spoke with Fox, and returned to the bedroom.  He ordered appellant to spread his legs with his hands in the air.  He then searched appellant's pants pocket, immediately found the baggies, and identified the contents as methamphetamine.

In response, the State offered the testimony of Sergeant Simler.  He stated that Fox was hired as a confidential informant and was paid for her services.  The only reason for her presence in San Saba was to help investigate criminal acts as a confidential informant.  In particular, she signed a written agreement with the Narcotics Enforcement Team in which she agreed to purchase

---

[3] At oral argument, the State represented to the Court that appellant brought the methamphetamine to Fox's home and gave it to her.  Nothing in the record supports the State's recitation of these facts.

"illegal narcotics" to provide information leading to arrests and prosecutions. She was to be paid for her work on a case-by-case basis.[4]

On February 14, Simler and Byler were at a gas station in San Saba when they received a phone call from Fox. As a result of information communicated to them in that phone call, they went to Fox's home. Simler knocked at the front door while Byler went to the back door. Fox opened the front door, invited Simler in, and told him he could find appellant in the back room. He went back and did not see appellant. He returned to the front room and asked Fox where appellant was. Fox again directed him to the back room. Upon his return, he found appellant emerging from the closet. He searched him and found two bags of methamphetamine in the right pocket of his jeans. He then arrested appellant.

No officer had searched Fox's home in the two or three days between the controlled substances purchase she made and February 14. No voice or video recordings were made of the events involving appellant at the home. No law-enforcement officer witnessed any of the encounters between appellant and Fox. Fox did not testify at the hearing.

Finally, appellant offered the rebuttal testimony of Sergeant Byler.[5] Byler stated that Fox worked as a confidential informant under his supervision and had most of her law-enforcement contact with himself and Officer Simler. She did not have another job while in San Saba. Byler

---

[4] Simler did not know exactly how much Fox received for the arrest in this case. He testified that the normal amount of payment in a case like this would be about $100.

[5] He also offered the rebuttal testimony of a friend, Shannon Patela. Her testimony adds nothing substantive to our discussion of this case.

arranged to pay Fox's rent and to turn on the utilities at the mobile home. In addition, he provided

her with food. She was in San Saba for about one month and left a few days after appellant's arrest.[6]

*Analysis*

We begin with the availability of the entrapment defense in this case. Appellant was

indicted for possession of methamphetamine with intent to deliver, the only charge in the record at

the time of the pretrial hearing. *See* Tex. Health & Safety Code Ann. § 481.112(c). In his motion

to dismiss, appellant reported that he had reached an agreement with the State that he would plead

guilty to the lesser included offense of possession of a controlled substance should the trial court

deny his claim of entrapment. *See id*. § 481.115(c). Both offenses were based on the same

facts—the presence of two "baggies" of methamphetamine in appellant's front pants pocket.

Because appellant does not dispute this fact, the entrapment defense is available to him. *See*

*Norman*, 588 S.W.2d at 345; *Warren*, 565 S.W.2d at 933; *Zamora*, 508 S.W.2d at 822; *see also*

*Groessel*, 440 F.2d at 605.

The State argued at oral argument that the entrapment defense is not available in this

case because appellant was indicted for possession with intent to deliver but denied at the hearing

the intent-to-deliver element. Thus, the State believes that appellant denied the commission of the

offense. We reject the State's reasoning as advocating an artful way of extracting a guilty plea from

a defendant who might have a meritorious entrapment claim. That is, the State's approach would

---

[6] Byler and Simler also made an arrest for a controlled substance purchase through Fox a few days before appellant's arrest.

allow it to overcharge alleged offenses in cases when it believes a defendant might raise an entrapment defense. The parties could then proceed with a pretrial hearing, at which the defendant could only honestly deny the commission of the offense as overcharged. The State would then argue that the entrapment defense should fail because the defendant denied the commission of the overcharged offense. The State's position misconstrues the controlling case law and ignores the fundamental policy basis of the entrapment defense. *See Norman*, 588 S.W.2d at 345; *Warren*, 565 S.W.2d at 933; *Zamora*, 508 S.W.2d at 822; *see also Groessel*, 440 F.2d at 605; Roiphe, *supra*, at 284.

Next, we must determine if appellant met his burden to come forward with some evidence to establish a *prima facie* case of entrapment. Appellant testified that the methamphetamine belonged to Fox, that it was in her home, and that she put it in his pants pocket when their sexual encounter was interrupted. In addition, Byler testified that Fox worked as a confidential informant for payment on a case-by-case basis, that Fox's sole purpose for being in San Saba was to work as a confidential informant, that she had no other employment while there, and that law enforcement paid her rent and utility bills and bought her food while she worked as their agent. Given this testimony, we have no difficulty concluding that appellant produced some evidence that Fox was a law-enforcement agent and that the possession of methamphetamine originated in Fox's mind, not in the mind of appellant. In addition, the circumstances of the sexual encounter interrupted by the noise at the door and Fox's reactions at that time are some evidence that appellant was induced by "means likely to cause a person" to be in possession of methamphetamine. *See* Tex. Pen. Code Ann. § 8.06(a). We agree with the trial court's conclusion that appellant established a *prima*

10

*facie* case of entrapment. *See* Tex. Code Crim. Proc. Ann. art. 28.01; *Richardson*, 622 S.W.2d at 856; *see also Gonzales*, 606 F.2d at 75.

Finally, we must decide if the State met its burden to disprove entrapment beyond a reasonable doubt. *See England*, 887 S.W.2d at 908; *Taylor*, 886 S.W.2d at 265. The State's witness, Simler, offered no testimony to contest that Fox acted as an agent of the State, and the State entered into evidence Fox's written agreement to act as a confidential informant in exchange for payment. In addition, Simler's testimony contradicted appellant's version on only two points—Simler's method of entry into the home and appellant's location when Simler entered the bedroom. We will accept Simler's version as true on those two points of fact and assume both that he knocked on the front door of the home and was invited in by Fox[7] and that he found appellant emerging from the closet.[8] *See Jackson*, 443 U.S. at 319; *Johnson*, 23 S.W.3d at 15. However, the State offered no evidence contradicting appellant's testimony that the methamphetamine belonged to Fox and that she put the packets in the pocket of his pants. In fact, the record establishes that Fox had access to controlled substances at least a few days before the arrest in this case and that one of her duties as a confidential informant was to purchase controlled substances.[9] In addition, the record reflects that

---

[7] Appellant testified that he heard a "boom, boom, boom" at the front door. Fox seemed surprised and began to put her clothes on. Appellant further testified that Fox did not let Simler or Byler in the home. Rather, he said that "they [came] storming in" before Fox was able to answer the door.

[8] Appellant testified that he remained on the bed when Fox left the bedroom.

[9] Fox's duty to purchase controlled substances would not alone support an entrapment defense. However, in light of all the evidence in the record, it has some weight supporting appellant's testimony that the controlled substances belonged to her.

11

no law enforcement officer searched Fox's home for drugs in the days before the arrest in this case and that the events in the home were not recorded in any way. We conclude that the State failed to meet its burden to disprove the entrapment defense beyond a reasonable doubt because the State failed to offer any evidence to contradict the evidence establishing the *prima facie* case of entrapment. We sustain appellant's issue on appeal.

### CONCLUSION

It remains fundamental law in Texas that a defendant may not be convicted of an offense when the actions of law enforcement produced the crime of which he stands charged. *See* Tex. Pen. Code Ann. § 8.06; *see also* Roiphe, *supra*, at 257. The rule of law itself requires that the State punish only those who are in some personal sense responsible for their actions. *See* Roiphe, *supra*, at 298.

We hold that the entrapment defense was available in this case and that appellant met his burden to produce some evidence to establish a *prima facie* showing of the defense. The State offered no evidence to contradict the assertions that the methamphetamine discovered in this case belonged to a law enforcement agent and that the agent directly placed it in appellant's pants pocket when their sexual encounter was interrupted, as arranged by that agent. Although we find distasteful the alleged conduct of law enforcement in this case, we rest our decision on the fact that the State failed to meet its burden to disprove entrapment beyond a reasonable doubt. The proper remedy when the State fails to disprove the entrapment defense at a pretrial hearing is dismissal of the

12

prosecution with prejudice. *Taylor*, 886 S.W.2d at 266. Accordingly, we reverse the judgment of conviction and order the prosecution dismissed with prejudice.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Justice Patterson concurs in the judgment only.

Reversed and Dismissed

Filed:   June 24, 2004

Publish