UNITED STATES of America,
Plaintiff-Appellee,

v.

Joe Lee ASHLEY, a/k/a John Doe,
Gwenniece Leveritte, and James A.
Small, Defendants-Appellants.

No. 76–3312.

United States Court of Appeals,
Fifth Circuit.

July 5, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 24, 1977.

Norton Bond, Pensacola, Fla. (Court-appointed), for Joe Lee Ashley.

Alan Bart Bookman, Pensacola, Fla. (Court-appointed), for Gwenniece Leveritte.

Henry R. Barksdale, Pensacola, Fla. (Court-appointed), for James A. Small.

Nickolas P. Geeker, U. S. Atty., Emory O. Williams, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Associate Judge,* and ·GEE, Circuit Judge.

COLEMAN, Circuit Judge.

A jury convicted the appellants of various drug-related offenses. All three were convicted of conspiracy to distribute heroin. U.S.C. Tit. 21 § 846. Leveritte was also found guilty of possession and Small was convicted of distribution. U.S.C. Tit. 21 §§ 841(a)(1); 844(a). Despite ably presented attacks on the handling of the trial and the sentencing hearing, we affirm.

* Associate Judge of the United States Court of Claims, sitting by designation.

## THE FACTS

On November 25, 1975, DEA agent Ellis Dean, accompanied by an informant named John Casey, went to the Bunny Club in Pensacola, Florida. Casey telephoned Larry Dortch and asked him to come to the Club. When he arrived, Casey asked Dortch about purchasing heroin. Dortch replied that he would have to talk to "his man". They left the Club and drove to the Fleets Inn Apartments where Dortch left the car. He returned a few minutes later and told Dean and Casey that his man had a large quantity of individual bags which he would sell for $1400. Dortch left again and returned with a small cellophane packet containing a brown substance which later proved to be an opium alkaloid.

After receiving this sample from Dortch, they went to the Green Building Bar where Dean was subsequently introduced to the appellant Small. They discussed the purchase of heroin, then went outside to conclude the transaction. Small told Dortch to "get the stuff from his lady". Dortch entered a car occupied by a woman whom Dean could not identify but whom Dortch identified as appellant Leveritte. Dortch returned and handed Dean a plastic bag containing a number of tin foil packets for which Dean paid $1300. Dean talked with Small and Dortch about future transactions then left with Dortch and Casey. After arriving at Dortch's apartment, they counted the packets and found there were only 137 instead of the promised 140. Dean told Dortch that the difference would have to be made up in future transactions and left.

Dean and Casey returned to Pensacola on December 11, 1975, to make another heroin purchase. They went to the Bunny Club to call Dortch but were unable to contact him. While there, Dean saw Small, who introduced him to appellant Ashley. They discussed buying more heroin and Small asked Dean to follow him to his residence. Small went in his car and Dean, Casey, and Ashley followed in Dean's car, with Ashley giving directions.

When they reached Small's residence, they went inside where Dean was introduced to Leveritte. After a brief discussion, Small said it would take about two hours to arrange the sale so Dean, Ashley, and Casey returned to the area of the Bunny Club. They had waited about three hours when Leveritte arrived and told Ashley the package was ready. They all returned to the Fleets Inn Apartments where Dean paid Small $1350 for a package. The substance later tested positive for an opium alkaloid.

Dean, Casey, and Ashley went back to the Bunny Club and Ashley told Dean that whenever he wanted to make another purchase, to give him a call. Ashley said he would transfer the message to Small.

Dean made his last trip to Pensacola to purchase heroin on February 3, 1976. He went to Small's apartment but Leveritte told him she didn't know where he could find Small. Dean told her that the previous purchase had been "light" and of poor quality. She replied that Small now had some better stuff and she would try to find him. Dean left and returned after Small arrived. Dean told Small of the problems with the previous buy and Small stated that he now had some good stuff and would make it up to him. Small said, however, that it would take some time to get it together so Dean left and came back later. On his return, Small said he had the package and asked Dean if he had someone to test its quality. Dean said that he did, left, and returned to the apartment with Willie Grey of the Pensacola Police Department. Small immediately recognized him and started yelling, "Willie, Willie, Willie". Small was then arrested as was Leveritte. Grey, who arrested Leveritte, testified that she was holding a spoon containing brown powder which proved to be opium alkaloids.

### Appellate Contentions

1. The appellants complain of being impermissibly limited in their cross-examination of Dortch. Dortch was asked whether he "had any agreement or understanding with anyone about a continuous conspiracy to distribute . . . ." A government objection to this was sustained. Out of the

jury's presence, defense counsel subsequently made a proffer of testimony through Dortch. Dortch stated that there had not been an "agreement" and that the November 25, transaction had been a one shot deal as far as he was concerned. The Court denied the proffer, stating:

> The guilt or innocence of this man or his testimony whether he participated in any of these events is just, as I can see the law to be, completely irrelevant. The guilt or innocence of each of these people stands or falls on the testimony insofar as they are concerned, and it's not necessary for the government to prove that the conspiracy charged actually took in all of the people charged in it.

■ Under the Federal Rules of Evidence, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Rule 401. This does not change the rule that a district court has wide discretion in determining relevance and materiality and its ruling will not be disturbed except for an abuse of discretion. *United States v. Garr*, 5 Cir. 1972, 461 F.2d 487, *cert. den.* 409 U.S. 880, 93 S.Ct. 170, 34 L.Ed.2d 135.

■ We, however, need not judge the soundness of this decision as the record indicates that the substance of the desired testimony was, in fact, laid before the jury. During the trial, Dortch was asked one of the identical questions posed on the proffer:

Q. Was this thing on November 25, 1975, any grand scheme? Was that a one shot deal with you, sir?

A. I don't understand what you mean.

Q. Well, I take it you weren't involved in any other transactions except that November 25 transaction. Is that right?

A. Yes, sir.

Dortch was also asked whether he and one of the appellants had ever discussed having a conspiracy to distribute drugs. He replied, "No". With the essence of the desired testimony before the jury, any harm in the original exclusion of evidence was eliminated.

■ 2. Leveritte complains that there was insufficient evidence to support her conviction. The jury's verdict must be sustained, however, if, taking the view most favorable to the government, there is substantial evidence to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Further, "participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances'." *Id.* We are certain that her conviction passes muster under this standard.

■ At virtually every step Leveritte was implicated. Leveritte was the woman in the car who gave Dortch 137 packets of heroin and whom Dortch paid. She was present when the arrangements were made for the December 11 sale and she acted as the messenger to inform Ashley when the package was ready. Leveritte informed Dean of the high quality of heroin possessed by Small on February 3 and contacted him for Dean. Finally, she was caught "redhanded" when arrested with heroin in her possession. Based on this evidence, it would have been surprising if the jury had not convicted her.

■ 3. Leveritte's counsel requested that the following charge be given:

> Guilt may not be inferred from mere association. Mere knowledge or approval of or acquiescence in the object and purpose of the conspiracy without an agreement to cooperate to accomplish such object or purpose is not sufficient to constitute when a party to the conspiracy.

The Judge refused, saying that it was already covered. He was correct.[1]

---

1. He instructed the jury that:

   Mere similarity of conduct among various persons and *the fact that they may have associated with each other* and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

   * * * * * *

■ 4. Leveritte and Small claim that the District Court erred in receiving hearsay evidence at the sentencing hearing which influenced it to assess longer sentences on them. At the hearing, held at the appellants' request, the government called three witnesses who related various facts about prior conduct of the appellants. Although much of this testimony came from information received from confidential informants, substantial incriminating evidence was based upon the witnesses' firsthand knowledge. At the close of the hearing, the District Court indicated that it had intended to impose ten-year sentences. Due to the testimony presented, however, Small and Leveritte both received twelve-years imprisonment with a special parole term of three years.

Appellants' reliance on *United States v. Espinoza,* 5 Cir. 1973, 481 F.2d 553, and *Shelton v. United States,* 5 Cir. 1974, 497 F.2d 156, is misplaced. These cases hold only that a defendant who denies the accuracy of information considered in imposing sentence must be afforded an opportunity to refute it. Such opportunity was afforded here. There is no indication that the testimony consisted of illegally obtained information or that the District Court increased the sentence simply because the appellants requested a hearing.

The rule which does control this matter was laid down in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Therein, Mr. Justice Black observed that a sentencing judge can "exercise a wide discretion in the sources and types of evidence" he uses "to assist him in determining the kind and extent of punishment to be imposed". *Id.* at 246, 69 S.Ct. at 1082.

The Justice characterized as essential the judge's "possession of the fullest information possible concerning the defendants' life and characteristics". *Id.* at 247, 69 S.Ct. at 1083. "We must recognize," Mr. Justice Black wrote, "that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life." *Id.* at 250, 69 S.Ct. at 1084.

*Williams'* explicit approval of the use of this type of evidence in making a sentence determination remains the law and is adhered to by this Circuit. *Houle v. United States,* 5 Cir. 1974, 493 F.2d 915; *United States v. Marcello,* 5 Cir. 1970, 423 F.2d 993, 1012, *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543, *reh. den.* 399 U.S. 938, 90 S.Ct. 2240, 26 L.Ed.2d 809.

■ 5. Small contends that the Court erred by refusing to give a requested instruction on the defense of entrapment. This is without merit. Small offered no evidence on the question. As we have stated, "Entrapment is an affirmative defense, in the sense that there is an initial burden of going forward upon the defendant". *United States v. Hodges,* 5 Cir. 1974, 493 F.2d 11, 12. *See: United States v. Harper,* 5 Cir. 1974, 505 F.2d 924, 926; *United States v. Bailey,* 5 Cir. 1974, 503 F.2d 969, 971. "If a defendant fails to carry the burden on the issue of entrapment forward, he is not entitled to submission of the issue to a jury". *United States v. Groessel,* 5 Cir. 1971, 440 F.2d 602, 606, *cert. den.* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713. No

What the evidence in the case must show beyond a reasonable doubt in order to establish proof that a conspiracy existed, is that the members in some way or manner or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

\*   \*   \*   \*   \*   \*

. . . a person who has no knowledge of a conspiracy but happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a conspirator.

*Before the jury may find that a defendant* or any other person *has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the* conspiracy was knowingly formed and that the *defendant* or other person *who is claimed to have been a member willfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy.* (Emphasis added.)

evidence tending to show entrapment was presented by the prosecution either, thus distinguishing this case from *Sears v. United States,* 5 Cir. 1965, 343 F.2d 139, where the government's own case-in-chief injected substantial evidence of entrapment into the case. *See, United States v. Morrow,* 5 Cir. 1976, 537 F.2d 120, 138.

■ 6. Ashley claims that there was insufficient evidence of his participation in the conspiracy to support his conviction and therefore his motion for acquittal should have been granted. The test in a criminal case to determine whether there is sufficient evidence to submit the case to the jury is:

. . . whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.

*United States v. Jeffords,* 5 Cir. 1974, 491 F.2d 90, 91.

■ Despite determined attempts to discredit Dean's testimony concerning Ashley, he never wavered. Covering seventy-one pages of the transcript, the cross-examination of Dean was thorough, probing, and expertly handled. Nevertheless, Dean stood firm in placing Ashley at the December 11, 1975, transaction and in describing his activities. There was adequate evidence for the jury to find that Ashley played a knowing and willing role in furthering the conspiracy. Ashley's actions in directing Dean to Small's residence, serving as the contact for Leveritte to tell when the deal was set, and offering to contact Small to facilitate future transactions, establish the appellant as acting in furtherance of the conspiracy and not just a hapless bystander. *See United States v. Rodriguez,* 5 Cir. 1975, 509 F.2d 1342, 1349.

■ 7. According to Ashley, the jury should have been instructed that the circumstances surrounding Dean's identification of Ashley must be convincing beyond a reasonable doubt. As no objection was raised at trial, however, this contention must pass the "plain error" standard to succeed. F.R.Crim.P. 52(b).

The circumstances upon which Dean's identification was based leaves no doubt that "plain error" does not exist. Dean spent over five hours in Ashley's presence on December 11. They sat in a bar booth together for some time and rode back and forth to Small's residence together.

Furthermore, Judge Arnow gave extensive instructions on the proof required to convict the appellants. Under these charges, for Ashley to have been convicted, which he was, the jury had to believe Dean's identification beyond a reasonable doubt. *Compare, United States v. Lewis,* 5 Cir. 1973, 485 F.2d 236, *cert. den.* 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876. We do not intimate what our decision would have been had a specific instruction been requested and refused. That question awaits a proper case.

■ 8. We are not persuaded that the District Court erred in refusing to give Ashley's requested instruction on "multiple conspiracies". He asserts that the evidence established the existence of several conspiracies rather than one, and the jury should have been so charged. The evidence, however, clearly indicates a continuing operation to supply Dean with heroin. The involvement of Small and Leveritte on each occasion provides an obvious thread. Ashley's offer to act as the contact for future sales emphasizes the continuing nature. The fact that Dortch and Ashley acted as a changing cast of characters does nothing to lessen the fact of one conspiracy. Once the existence of a common scheme of conspiracy is shown, "slight evidence is all that is required to connect a particular defendant with the conspiracy". *United States v. James,* 5 Cir. 1976, 528 F.2d 999, 1011, *cert. den.,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326. The fact that a conspirator is not present at, or does not participate in, all of the conspiratorial activities does not, by itself, exonerate him. *Id.* at 1012. And it is axiomatic that it is not necessary for each conspirator to have entered into the unlawful agreement at its inception. *United*

States v. Jones, 5 Cir. 1973, 480 F.2d 954, 958, *cert. den.* 414 U.S. 1071, 94 S.Ct. 582, 38 L.Ed.2d 476. The totality of the evidence certainly indicates "a concert of action, all parties working together understandingly, with a single design . . .". *United States v. Prout,* 5 Cir. 1976, 526 F.2d 380, 385.

■ Further, even if this case does present circumstances of changing and overlapping membership and activities, they were all directed toward a common goal. In such instances, "most courts have found, as we do here, sufficient evidence to uphold a jury verdict reflecting a single conspiracy." *United States v. Beasley,* 5 Cir. 1975, 519 F.2d 233, 246.

■ Going one step farther, even if we would say that there was proof of multiple conspiracies (which in our view there was not), that would not automatically constitute a fatal variance from a single offense as charged in the indictment. *United States v. Wayman,* 5 Cir. 1975, 510 F.2d 1020, 1025, *cert. den.* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67. "If more than one conspiracy was proved, of at least one of which the appellant was guilty, it is clear that there was no variance affecting his substantial rights". *Id.* at 1025.

■ Because of our disposition of this issue, Ashley's claim that he was impermissibly denied severance must likewise fail. *See, United States v. Wayman, supra,* 510 F.2d at 1024–1025.

Accordingly, the judgment of the District Court is

AFFIRMED.