**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank AMMIRATO, Defendant-Appellant.**

Nos. 80–5204, 80–5667.

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 15, 1982.
Rehearings Denied May 12, 1982.

* Former Fifth Circuit case, Section 9(1) of Public    Law 96–452–October 14, 1980.

John Steven Berk, Fort Lauderdale, Fla., for defendant-appellant in both cases.

William C. Bryson, Diane M. Henson, Dept. of Justice, Washington, D. C., for plaintiff-appellee in both cases.

Berk & Wagner, Fort Lauderdale, Fla., for defendant-appellant in No. 80–5667.

Before HILL, Circuit Judge, SMITH **, Judge, and HENDERSON, Circuit Judge.

JAMES C. HILL, Circuit Judge:

Frank Ammirato pleaded guilty and was convicted for a number of firearms and narcotics offenses. He was sentenced to a total of 26 years imprisonment. Ammirato now appeals the District Court's denial of his motion for a reduction of sentence, or in the alternative to withdraw his pleas of guilty, and the denial of his motion to vacate sentence under 28 U.S.C. § 2255. The principal issues presented by this appeal are whether the District Court properly accepted Ammirato's guilty pleas, whether the District Court properly admitted hearsay evidence during Ammirato's sentencing hearing, and whether the District Court properly imposed consecutive sentences for separate convictions under the National Firearms Act. We find that the District Court acted properly in all regards, and therefore affirm the denial of Ammirato's motions.

Ammirato was charged in separate indictments filed in the United States District Court for the Southern District of Florida and in the United States District Court for the Northern District of Illinois. The two indictments were for related offenses. In the Southern District of Florida Ammirato and seven co-defendants were named in a 21-count indictment. Ammirato was ultimately charged in the Southern District of Florida with 19 counts for the following offenses: conspiring to distribute controlled substances and to possess, transfer and transport unregistered firearms, in violation of 18 U.S.C. § 371; conspiring to import controlled substances, in violation of 21 U.S.C. § 963; distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1); possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); possessing unregistered machine guns, in violation of 26 U.S.C. § 5861(d) and § 5871; transferring unregistered machine guns, in violation of 26 U.S.C. § 5861(e) and § 5871; and shipping firearms in interstate commerce with intent to commit a felony, in violation of 18 U.S.C. § 924(b).

In the Northern District of Illinois Ammirato and two co-defendants were named in a twelve count indictment. Ammirato was charged in ten counts for the following offenses: possessing unregistered firearms, in violation of 26 U.S.C. § 5861(d) and § 5871; transferring firearms out-of-state without a license, in violation of 18 U.S.C. § 922(a)(5) and § 924; delivering a package containing firearms to an airline without notice, in violation of 18 U.S.C. § 922(e) and § 924; transporting firearms in interstate commerce while a convicted felon in violation of 18 U.S.C. § 922(g) and § 924; transferring unregistered firearms in violation of 26 U.S.C. § 5861(e) and § 5871; possessing firearms which were not identified by serial numbers, in violation of 26 U.S.C. § 5861(i) and § 5871; and engaging in business as a dealer of firearms without registering as a dealer, in violation of 26 U.S.C. § 5861(a) and § 5871.

The trial of all the defendants charged in the Florida indictment commenced on May 21, 1979. On May 25, 1979, after four days of trial, counsel for Ammirato informed the district court that Ammirato wanted to change his plea from not guilty to guilty on

** Honorable Edward S. Smith, Judge for the U. S. Court of Claims, sitting by designation.

all counts. The court consequently proceeded to conduct an inquiry to determine the acceptability of Ammirato's guilty plea. The court engaged Ammirato in a dialogue which disclosed the following: that Ammirato's lawyer had carefully explained to Ammirato all of the counts charged against him in the Florida indictment; that Ammirato understood the government's analysis of the indictment as outlined in the government's opening statement; that Ammirato had not been threatened by anyone in order to induce him to plead guilty; and that Ammirato understood that by pleading guilty he was waiving his right to trial.

The court informed Ammirato that by pleading guilty to all of the charges in the Florida indictment he could be sentenced to a total of 158 years. The court also informed Ammirato that he could be fined approximately $10,000 per count, but that the court would not consider imposing a fine greater than $100,000.

The court emphasized to Ammirato that the purpose of his inquiry was to determine that Ammirato's guilty plea was being given freely and voluntarily. Ammirato assured the court that it was. Ammirato further assured the court that he was pleading guilty to the charges solely for the reason that he was in fact guilty. Counsel for Ammirato stated to the court that he was satisfied that Ammirato's plea was voluntarily made and that there was a sufficient factual basis to support it.

The district court thus accepted Ammirato's plea and found that it was made freely and voluntarily with full knowledge of the probable consequences. The court found further that the government had established a sufficient factual basis for the plea.

Pursuant to Rule 20, F.R.Crim.P. the district court transferred the Illinois case to the Southern District of Florida and on July 3, 1979 held another plea hearing for this case. The inquiry conducted by the court was similar to that conducted in the Florida case. All of the charges in the indictment were explained to Ammirato who stated that he understood them. Ammirato was informed that he faced a maximum sentence of 85 years imprisonment and an $85,000 fine for all the Illinois charges combined. The Court informed Ammirato of his right to a jury trial, and Ammirato indicated that he understood this right and was waiving it. Ammirato also indicated that he was pleading guilty to the charges against him only because he was in fact guilty and not because he had been threatened or promised anything. The court thus accepted Ammirato's plea of guilty to the charges in the Illinois indictment. The court found that there was a factual basis to support the plea and that Ammirato had made it freely and voluntarily with full knowledge of the probable consequences. Counsel for Ammirato again stipulated to the adequacy of the factual basis for the plea.

1. *Acceptance of Guilty Pleas*

■ Ammirato now argues that the District Court erred in accepting his guilty pleas because the pleas were not entered voluntarily and intelligently. Ammirato first maintains that he was under the impression that his attorney had negotiated a plea bargain that would result in a sentence of 10 to 12 years rather than the 26 year sentence that was actually imposed. Our review of the record indicates that this argument is without merit. At a hearing on May 25, 1979, shortly before Ammirato entered his change of plea for the charges in the Florida indictment, the prosecutor and counsel for Ammirato specifically indicated to the court that they had been unable to conclude a plea agreement. The prosecutor explained that the Government was unwilling to accede to defense counsel's request that the charges in the Illinois indictment be dropped in exchange for Ammirato's plea of guilty to the charges in the Florida indictment. Counsel for Ammirato expressed to the court his disappointment that a plea agreement could not be worked out, but indicated that, in light of the evidence of substantial guilt, Ammirato was still prepared to plead guilty to all of the charges in both indictments.

■ It is well established that "no guilty plea which has been induced by an unkept

plea bargain can be permitted to stand." *Bryan v. United States*, 492 F.2d 775, 778 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). In the present case, however, the record gives no evidence of the existence of a plea agreement, but on the contrary, clearly shows that the parties were unsuccessful in their attempt to conclude such an agreement. As this Court stated in *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978), "where, from the transcript, the plea-taking proceedings are clear and regular on their face, a petitioner asserting the existence of a bargain outside the record and contrary to his own statements under oath bears a heavy burden." *See United States v. Flores*, 616 F.2d 840, 842 (5th Cir. 1980). Ammirato has clearly not met this burden.[1]

Ammirato next argues that his plea to the charges in the Florida indictment was not entered knowingly and intelligently because the District Court failed to inform him of the plea's maximum consequences. Ammirato contends that the District Court erred by not informing him of the maximum penalties on each count of the indictment. He maintains that it was inadequate for the Court to only inform him of the total maximum penalty that could be imposed for all of the counts considered in the aggregate.

■■ We find no merit to this argument. A guilty plea is involuntary if it is made in ignorance of its consequences, including the length of any possible sentence. *Cheely v. United States*, 535 F.2d 934, 935 (5th Cir. 1976). Rule 11(c)(1) F.R.Crim.P. mandates that before accepting a guilty plea the court must determine that the defendant understands "the maximum possi-

ble penalty provided by law." The language of Rule 11(c)(1), on its face, does not require, however, that the District Court provide the defendant with a count by count breakdown of the maximum possible penalties. We find that such an elaboration is unnecessary. By informing Ammirato of the maximum aggregate sentence which he could receive the District Court accorded Ammirato an adequate understanding of the maximum possible penalty that he faced.[2]

■■ Ammirato argues further that the District Court erred in accepting his plea to the Florida charges without determining adequately that there was a sufficient factual basis to support the plea. This argument is baseless. In determining that there was a sufficient factual basis for the plea the District Court relied properly on the testimony which it had heard during the four days of trial prior to Ammirato's change of plea.[3] Our review of this testimony persuades us that it constitutes an adequate source for such reliance. "As long as the factual basis is developed on the record, it may come from several sources." *United States v. King*, 604 F.2d 411, 414 (5th Cir. 1979). The applicable test is whether the trial judge is subjectively satisfied with the factual basis. *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir. 1979). We are convinced that the District Court did not abuse its discretion in finding a sufficient factual basis for the guilty plea.

Ammirato next argues that he did not plead guilty voluntarily to Count II of the Florida indictment, and that the District Court thus erred in accepting a guilty plea

---

1. Ammirato has not supported his claim by citing to any part of the record where a 10 to 12 year sentence was mentioned by any of the parties. The only time that mention was made of possible sentence lengths was at the two plea hearings when the District Court informed Ammirato that he faced a maximum sentence of 158 years for the Florida charges and 85 years for the Illinois charges.

2. We are not persuaded that Ammirato would have been better aided by a count by count

breakdown of the maximum penalty. Ammirato clearly indicated to his attorney and to the court that he wished to plead guilty to all of the charges. Thus what Ammirato needed to know was the total penalty to which he was exposing himself.

3. We should also note that counsel for Ammirato specifically stated to the Court, "I am satisfied that there is a sufficient factual basis."

to this count.[4] This argument too must fail. The record indicates that Ammirato merely objected to the indictment language of Count II which stated that Ammirato conspired with one Dante Grassi. Counsel for Ammirato informed the District Court that Ammirato would not admit to conspiring with Grassi, but that because Count II charged Ammirato with conspiring with "Dante Grassi and others unknown," Ammirato was willing to plead guilty to conspiring with "others unknown." It was on this basis that the plea was rendered and accepted.

We find no error in the District Court's acceptance of Ammirato's plea to Count II. Ammirato's plea was not accompanied by a protestation of innocence, but instead was rendered with an immaterial objection to the language of the indictment. Because the District Court found that there was a sufficient factual basis to support Ammirato's plea to this count the Court acted properly in accepting the plea. *See Willett v. State of Georgia*, 608 F.2d 538 (5th Cir. 1979); *North Carolina v. Alford*,

---

**4.** Count II charged Ammirato with conspiring to import controlled substances, in violation of 21 U.S.C. § 963.

**5.** The first witness called was Alfred Lamanna an FBI agent whose duties include investigating organized crime in southern Florida. Lamanna testified that six independent informants had reported to him that Ammirato was an associate of Dominick Santorelli and that Santorelli was a member of a Chicago-based organized crime family.

The next witness called by the government was Elie Scott, an FBI agent with ten years of experience, five of which were spent investigating organized crime in southern Florida. Elie testified that three independent informants of proven reliability had reported that Ammirato was a close associate of Santorelli and an important operative in Santorelli's illegal loansharking, weapons and narcotics activities.

Another F.B.I. agent from Chicago, Arthur Fitzinmayer, testified that one Robert Brown gave him information that linked Ammirato with Santorelli's loansharking operation.

Brian McCoy, a detective with the Florida State Attorney's Task Force on Organized Crime testified that Ammirato and two of his co-defendants had been observed by police officers visiting Santorelli at a hospital after Santorelli had been shot.

---

400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

## 2. *Use of Hearsay Evidence In Sentencing Hearing*

On July 31, 1979 the district court held a sentencing hearing at which six government witnesses gave testimony concerning Ammirato's alleged association with reputed organized crime figures.[5] Ammirato argues that the district court erred in receiving hearsay evidence from these witnesses. He contends that the use of this evidence deprived him of due process because it prevented him from confronting and cross-examining the anonymous informants who were the source of the hearsay. Ammirato further argues that he was deprived of his right to due process because the hearsay testimony had no basis in fact such that the district court relied on misinformation in determining his sentence.

18 U.S.C. § 3577 gives the district courts extensive latitude in the information which they can consider in making sentencing determinations.[6] In *Williams v. New York*,

---

John Collins, a sergeant in the Organized Crime Division of the Dade County, Florida Police Department testified that he received information from an informant that Ammirato worked in the loansharking operation of Frank Gagliardi, who was reputed to be a member of the Gambino organized crime family. Collins testimony also brought out the fact that Gagliardi pleaded guilty to various loansharking charges, and that Ammirato was convicted of contempt of court for refusing to testify against Gagliardi.

The final witness to testify against Ammirato was Bruce Snyder an agent with the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms. Snyder testified that according to certain lease agreements Ammirato had signed a promissory note for equipment bought for a restaurant owned by Dominick Santorelli.

**6.** 18 U.S.C. § 3577 reads:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949) the Supreme Court enunciated the rule that a sentencing judge can "exercise a wide discretion in the sources and types of evidence" he uses "to assist him in determining the kind and extent of punishment to be imposed." [7] *Williams* explicitly held that a defendant is not denied due process of law when a judge uses out-of-court information in determining his sentence.

■ In *United States v. Ashley*, 555 F.2d 462 (5th Cir. 1977) this Circuit relied on *Williams* and found that the district court did not err in receiving hearsay evidence at a sentencing hearing. *Ashley* is similar to the present case in that the hearsay complained of consisted of information received from confidential informants. Due process is not violated by the use of such evidence so long as the defendant is afforded an opportunity to refute it, and so long as the evidence is reliable. *Ashley supra*, 555 F.2d at 466, *United States v. Espinoza*, 481 F.2d 553 (5th Cir. 1973).

■ Ammirato's contention that he was not given an adequate opportunity to refute the hearsay evidence is unfounded. Ammirato claims that because the government did not apprise him of the evidence it planned to present against him prior to the sentencing hearing, he was deprived of an adequate opportunity to rebut the evidence. Counsel for Ammirato admitted at oral argument, however, that Ammirato did not make a request for a continuance in order to prepare an adequate rebuttal. The record clearly indicates that Ammirato was given a full opportunity to comment on or rebut the evidence presented at the hearing. Not only did he decline to do so, but counsel for Ammirato stated that he did not dispute 95 percent of the allegations made by the government.

Ammirato's argument that the hearsay evidence was so unreliable that its use by the district court constituted an impermissible reliance on misinformation is also unfounded. The government presented the hearsay evidence only for the purpose of showing that Ammirato was an associate of individuals who were reputed to be major organized crime figures operating in southern Florida and Chicago. The evidence had sufficient reliability for the district court to consider it for this purpose. Four different government agents testified regarding Ammirato's association with Santorelli and Gagliardi—two reputed organized crime figures. The testimony of the four agents was based on information received from eleven independent informants. The probative worth of such multiple testimony was aptly noted in *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979) when the court stated:

> Even if one or several of these experienced agents miscalculated the reliability of an informant, the large number of agents and informants greatly reduces the margin for error.

603 F.2d at 1057.

Further corroboration of the informant's information was provided by statements made by Ammirato and his counsel. Ammirato admitted that he knew Santorelli and Gagliardi, although he claimed that his association with them was strictly legal. Ammirato maintained that he was merely "impersonating a gangster." In his closing statement counsel for the government characterized Ammirato as "an associate of individuals who are major and significant hoodlums." In response Ammirato's lawyer indicated that he did not dispute this characterization, but that he only disputed the period of incarceration that Ammirato should be given.

---

7. Ammirato's contention that *Williams* is no longer controlling authority is erroneous. The Supreme Court continues to adhere to *Williams* and recently noted that it "reaffirmed the 'fundamental sentencing principle' that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980) quoting *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978).

### 3. *Consecutive Sentences*

The final argument raised by Ammirato is that the district court erred in imposing consecutive sentences for the firearms convictions which exceeded the ten year maximum sentence permitted under Title 26 U.S.C. § 5871.[8] We also find no merit in this argument.

Ammirato received an eight year sentence for the firearms charges contained in the Florida indictment and a consecutive four year sentence for the firearms offenses contained in the Illinois indictment. Ammirato cites *United States v. McDaniel*, 550 F.2d 214, 219 (5th Cir. 1977) and *Rollins v. United States*, 543 F.2d 574 (5th Cir. 1976) as authority for his argument that the district court erred in sentencing him to a total of twelve years for the firearms violations. These cases are inapposite. They essentially hold that when separate violations of § 5861 of the National Firearms Act relate to a single firearm, the total sentence imposed cannot exceed the ten-year maximum penalty provided in § 5871. The § 5861 violations alleged in both the Florida and Illinois indictment related to a number of separate firearms and transactions. Furthermore, the violations alleged in the Florida indictment involved different firearms and different transactions than those alleged .in the Illinois indictment. Under these circumstances the district court was clearly entitled to impose consecutive maximum ten-year sentences for the separate violations contained in the two indictments.

AFFIRMED.

---

**8.** Title 26 § 5871 reads:

Any person who violates or fails to comply with any provision of this chapter shall upon conviction be fined not more than $10,000.00 or be imprisoned not more than ten years or both, and shall become eligible for parole as the Board of Parole shall determine.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.