**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Felipe GONZALES and Vincente Rodriguez Ovalle, Defendants-Appellants.**

**No. 79–5254.**

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1979.

Rehearing Denied Nov. 27, 1979.

---

71

Jimmy Phillips, Jr., Angleton, Tex., for defendants-appellants.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants Felipe Gonzales and Vincente Rodriguez Ovalle were convicted after a jury trial of conspiring to possess with intent to distribute and to distribute a quantity of heroin contrary to 21 U.S.C. §§ 846 and 841(a)(1), and of possessing and distributing heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1] On appeal, appellants assert a number of points of

---

1. Appellants were each charged with a ten-count indictment. The Government dismissed two counts on the basis of the district court's view that the two counts were repetitive with two other counts in that they dealt with the same narcotics transaction. Appellant Ovalle was acquitted of one other count by the court on the ground that no evidence had been presented connecting Ovalle to the crime alleged. Appellants were tried jointly and convicted by a jury of all remaining counts. Gonzales received a sentence of seven years' imprisonment to be followed by a special parole term of five years. Ovalle received a nine-year jail term to be followed by a special parole term of five years.

error, but rely principally on the contention that the district judge erred in refusing to compel the Government to disclose the identity and whereabouts of two confidential informants. After a careful review of the record, we find appellants' contentions to be without merit, and accordingly affirm their convictions.

The evidence at trial showed that on August 8, 1978, Special Agent Russell Reina of the Drug Enforcement Administration (DEA) went to the residence of appellant Gonzales located in Edinburg, Texas. Reina was accompanied by two confidential informants, one of whom introduced Reina to Gonzales. Gonzales then left the group in order to place a telephone call to someone who was going to bring over a sample of heroin. While awaiting his arrival, Reina and Gonzales discussed the general availability of heroin. Within a few minutes, appellant Ovalle arrived at the scene. Ovalle gave Reina a free sample of .33 grams of heroin. Reina discussed the quality of the heroin with appellants, and a possible purchase price if Reina found the sample to his liking. At that time Reina, accompanied by one of the informants, went back to Reina's car where a field analysis was performed. The test proved positive for an opium derivative. Returning from his car, Reina expressed his displeasure with the apparent quality of the sample and stated that he would let them know if he wished to make a purchase. During the initial meeting on August 8, the informants were within hearing distance of the conversation between appellants and Reina, and one of the informants joined in general conversation. The main negotiations concerning the quantity, quality, and price of the heroin, however, were conducted by Reina. The primary purpose of the informants' presence was to introduce Reina to the appellants and to reassure them as to Reina's "good" character.

On August 9, Reina again went to Gonzales' home, this time accompanied by only one informant. After exchanging pleasantries, Gonzales reached into a kitchen cabinet and produced two packages of heroin. The first package contained 24.34 grams of heroin warranted to be of the same quality as the free sample given Reina on August 8. The second package was another free sample of .28 grams of heroin of supposedly higher quality. Reina paid Gonzales $2,000 in official government funds for the larger package of heroin. During the course of the meeting, Gonzales indicated that Ovalle had brought the heroin to his home. Throughout the negotiations, the informant was present in the room, but did not enter into the narcotics transaction. The conversation relative to price, quantity, and quality was conducted entirely by Reina. The informant's only active participation in the August 9 meeting was to call Gonzales prior to the meeting and then to relay Gonzales' message to Reina that a quantity of heroin was available for sale.

On August 15, Reina called Gonzales to discuss further purchases. Gonzales suggested that he call again later that evening so that he could talk directly to Gonzales' supplier. Reina returned the call as directed and after talking briefly with Gonzales, Reina talked with the supplier, whom Reina recognized as Ovalle. Ovalle indicated that he had received some heroin which was available for purchase. They decided that a face-to-face meeting was necessary and tentatively scheduled one for the next day. On August 16, Reina, again accompanied by one informant, met with appellants on a roadside near Gonzales' home. Reina expressed his displeasure with the quality of the heroin received earlier. Ovalle then directed Gonzales to show Reina the ounce of heroin he had brought with him. Reina took the ounce back to his car and extracted a 2.3-gram sample, indicating to appellants that he required a small amount to test prior to any additional purchases. There is no indication that the informant played any role in this transaction aside from his mere presence.

The next occurrence took place on August 30, when Reina placed another phone call to Gonzales. Gonzales stated that he had 4 ounces of heroin available for purchase. Once again, Reina expressed dissatisfaction with the quality of the heroin he

had received, but indicated a willingness to buy additional heroin if the terms were favorable. On August 31, Reina went to Gonzales' home to pursue the matter. Gonzales informed him that Ovalle could not come over as he had other business to attend. The issue of quality was discussed once more. Gonzales explained that his connection had been improperly diluting the heroin, but that the problem had been solved. Reina explained that he could not purchase any more heroin until he was sure that the quality would be improved. At that point, Gonzales gave Reina two more free samples. One sample of 1.31 grams was supposedly of the new quality, whereas the second sample of 2.24 grams was warranted to be of the same quality as the first sample given to Reina. Before leaving, Reina was told that a large shipment of heroin was going to be delivered in early September if Reina was interested in any purchases. During the exchanges on August 30 and 31, no informants were present.

Gonzales telephoned Reina on October 3, reporting that he had 14 ounces of heroin available. Reina indicated that he was busy at the moment, but that he would get in touch with him soon. Reina called Gonzales the next day, October 4, but Gonzales was not at home. Reina left a message and Gonzales returned the call shortly thereafter. Gonzales stated that everything was ready, and then he put Ovalle on the phone. Reina and Ovalle arranged a meeting in a food store parking lot in McAllen, Texas. Ovalle, driving a car owned by Gonzales, met with Reina as planned. Reina entered Gonzales' car and Ovalle showed him a brown paper bag containing 14 ounces of heroin. Ovalle told Reina that he wanted to exchange the money and heroin at a different location and asked Reina to follow him in his car. Once on the road, Reina gave a prearranged arrest signal, at which time Ovalle was arrested by a number of other officers. No informants were present during this transaction, nor did any participate in the event in any fashion.

Ovalle told arresting officers the address of Gonzales' place of employment. They went immediately to that address and subsequently arrested Gonzales. They did not have an arrest warrant. A search of Gonzales' person at the time of the arrest revealed 21.88 grams of heroin in his left front pocket and .77 grams of heroin in his right front pocket. The arresting officer testified that they feared that Gonzales might flee the jurisdiction if he were to learn of Ovalle's arrest, and thus did not first obtain an arrest warrant before going to Gonzales' work place.

Appellants claim that they were entrapped by the combined actions of the secret informants and Agent Reina. In this regard, appellants assert that it was error for the district judge to deny their motions seeking to ascertain from the Government the identity and whereabouts of the informants.[2] Given their alleged entrapment defense, appellants argue that the Government's limited privilege of confidentiality must give way under the logic of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro,* the Supreme Court established a balancing test for determining whether the Government should be compelled to disclose an informant's identity. The court held that:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

**2.** There is much discussion in both the briefs and oral argument about whether appellants in fact knew the identity of one of the informants and whether they exercised due care in locating him. The record does not disclose adequate basis for determining the issue. As a result, we consider the question of disclosure by assuming the confidential nature of the identity of the informant. This assumption is based on the fact that appellants were never sure that the name that they had was correct and had no knowledge of the informant's whereabouts.

353 U.S. at 62, 77 S.Ct. at 628–29. In striking the balance in favor of disclosure in the specific case presented in *Roviaro,* the Court found it significant that the secret informant played a prominent role in the criminal activity, and indeed was the sole participant besides the defendant in the specific criminal event involved.

■ This court has been called upon repeatedly to consider the balance enunciated in *Roviaro.* An analysis of the case law reveals that two factors are of primary importance in striking that balance. First is the degree of participation exercised by the informant. *See, e. g., Alvarez v. United States,* 5 Cir., 525 F.2d 980, 982, *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); *United States v. Clark,* 5 Cir., 1973, 482 F.2d 103, 104. When the confidential informant is not "an active participant in the criminal activity, but only a tipster, disclosure of his identity is not required . . . ." *United States v. Moreno,* 5 Cir., 1979, 588 F.2d 490, 494. Thus, even though an informant is present during a critical transaction, the fact that he does not actively participate favors nondisclosure. *United States v. Alonzo,* 5 Cir., 571 F.2d 1384, 1387, *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978); *United States v. Davis,* 5 Cir., 1973, 487 F.2d 1249, 1251. The second important factor is the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant. *Davis, supra; United States v. Acosta,* 5 Cir., 1969, 411 F.2d 627, 630. Thus, it has been frequently held that mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. *See, e. g., United States v. Hare,* 5 Cir., 1979, 589 F.2d 242, 243; *Moreno, supra; United States v. Hernandez-Vela,* 5 Cir., 1976, 533 F.2d 211, 213. This principle applies with equal force in cases where the defendant relies on an entrapment defense; precedent from this circuit makes it clear that the mere allegation of entrapment is not sufficient in and of itself to force disclosure. *United States v. Hansen,* 5 Cir., 1978, 569 F.2d 406, 410–11; *Alvarez, supra; United States v. Hodges,* 5 Cir., 1974, 493 F.2d 11, 12–13.

■ Our consideration of the relationship between entrapment and disclosure is aided by a clear understanding of the nature of the entrapment defense. Entrapment is an affirmative defense in that the defendant must present some evidence of entrapment before the issue is properly raised. *See, e. g., United States v. Buckley,* 5 Cir., 1978, 586 F.2d 498, 501, *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *United States v. Timberlake,* 5 Cir., 1977, 559 F.2d 1375, 1379; *United States v. Ashley,* 5 Cir., 555 F.2d 462, 466–67, *cert. denied sub nom. Leveritte v. United States,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977). Thus, the defendant has the burden of production in that he must bear "the initial burden of going forward with evidence of governmental involvement and inducement." *United States v. Wolffs,* 5 Cir., 1979, 594 F.2d 77, 80. In this regard, the defendant must produce "some evidence, but more than a scintilla, that [he was] induced to commit the offense." *United States v. Groessel,* 5 Cir., 440 F.2d 602, 606, *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *Wolffs, supra,* 594 F.2d at 81. This initial burden on the defendant to produce some evidence of entrapment has important ramifications for disclosure of an informant's identity under *Roviaro.* Unless some evidence of entrapment is adduced by the defendant, thereby properly raising the defense, disclosure would be unjustifiable. As stated in *Alvarez,* it is "defendant's responsibility to make an initial proffer on his entrapment defense before *Roviaro's* balancing process could be invoked." *Alvarez, supra,* 525 F.2d at 982. Disclosure based upon mere speculation as to the relevancy of an informant's testimony is inappropriate given defendant's burden of production. *Hodges, supra,* 493 F.2d at 12. *See Hansen, supra,* 569 F.2d at 409.

■ In the present case, appellants have not met their burden of producing evidence of entrapment. Appellants chose not to testify on their own behalf. While a

defendant's silence is not inherently inconsistent with a defense of entrapment, *Groessel, supra,* 440 F.2d at 605, such silence cannot provide the grounds for disclosure. *Hodges, supra,* 493 F.2d at 12–13. If disclosure was required whenever a defendant elected not to testify and to allege entrapment, then the Government's interest in confidentiality could not be adequately safeguarded. Here, appellants have not established any basis for finding the existence of entrapment. Indeed, the record is replete with evidence demonstrating appellants' predisposition and willingness to engage in heroin trafficking. There is no evidence that Reina ever pressured appellants into dealing with him. In fact, Reina refused to purchase heroin offered him by appellants on several occasions stating that the quality was inferior. Appellants nonetheless continued to offer Reina free samples in order to induce further purchases. Considering the record as a whole, and its absence of even an arguable suggestion of entrapment, the district judge properly refused appellants' motion for disclosure.[3]

■ The district judge heard motions for disclosure at various points in the trial. He initially denied the application subject to later reconsideration should the evidence demonstrate the need for the informants' testimony. This procedure is a proper way of considering such a motion in that it fully protects the defendant's opportunity to demonstrate the relevancy of the informant's testimony. *See United States v. Morris,* 5 Cir., 1978, 568 F.2d 396, 399. The district judge permitted appellants wide-ranging cross-examination of government witnesses in their effort to show entrapment. When asked by the court how the informants' testimony could be expected to assist them, appellants were unable to identify any specific facts which might be established if the informants were required to testify. The district judge's decision to deny the motions for disclosure was explicitly based on appellants' failure to present any evidence of need for the testimony.

■ Appellants' other contentions are without merit. First, appellant Gonzales asserts that the heroin seized from his person after his arrest on October 4 should have been excluded because no arrest warrant had been obtained. Gonzales' view ignores the fact that DEA agents have been granted specific statutory authority to make warrantless arrests on the basis of probable cause. 21 U.S.C. § 878(3)(B). *See generally United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Certainly the officers had probable cause to arrest Gonzales after the arrest of his partner Ovalle. Moreover, the district judge found that the agents were justified in acting speedily in arresting Gonzales without a warrant because of the real possibility that he might flee the country.

■ Appellants also object to the introduction of certain testimony by Agent Reina on the ground that it constituted hearsay. Specifically, Reina testified that one of the informants said that Sancho Gonzales, brother of appellant Felipe Gonzales, had told the informant that if he ever needed any narcotics he should talk to Felipe. This testimony occurred in response to defense attorney's questioning during cross-examination. The defense attorney asked

---

**3.** Even if we find that appellants presented sufficient evidence to raise the entrapment defense, the informants were not shown to be active participants so as to justify disclosure. To be sure, the informants were present during and overheard significant conversations on August 8, 9, and 16. But mere presence is not sufficient grounds to force disclosure. *Alonzo, supra; Davis, supra.* The evidence of direct participation is weak. On August 8, one informant took part in the general discussion. Yet, this participation is consistent with the informant's role of introducing Reina to appellants and aiding Reina in gaining their trust. On August 9, one informant called Gonzales and later relayed Gonzales' message that a certain quantity of heroin was available. There is no evidence that this call represented coercive pressure on Gonzales, and a more realistic interpretation of the event is that the informant acted as a passive conduit for the information. The informants did not actively participate in the other transactions. Under the principle established in *Alonzo* and *Davis,* this minimal degree of participation would not require disclosure even if the entrapment defense had been established.

Reina whether he knew for a fact that the informant and appellant Gonzales had discussed heroin dealing prior to the meeting on August 8. Reina's answer was a detailed explanation of the reasons why he believed that the informant had indeed discussed narcotics with Gonzales prior to August 8. Thus, the statement was not offered for the truth of the matter asserted, but rather to explain the basis of Reina's answer, as well as to explain Reina's subsequent actions. Statements not offered for the truth of the matter asserted are not hearsay. *See, e. g., United States v. Rubin,* 5 Cir., 1979, 591 F.2d 278, 283; *United States v. Bobo,* 5 Cir., 1978, 586 F.2d 355, 371–72. Moreover, Reina's testimony was invited by appellants' own attorney on cross-examination, and such testimony therefore does not constitute reversible error. *United States v. Pentado,* 5 Cir., 463 F.2d 355, 362, *cert. denied sub nom. Ochoa v. United States,* 409 U.S. 1079, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972), and *Noa v. United States,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973). *See United States v. Delk,* 5 Cir., 1978, 586 F.2d 513, 516; *United States v. Cook,* 5 Cir., 1978, 586 F.2d 572, 578; *United States v. Lewis,* 5 Cir., 1975, 524 F.2d 991, 992.

Appellants' final contention is that the district judge erred in allowing Agent Robert Clark, who had participated in the investigation, to testify about the reasons why the DEA did not arrest appellants after the first transaction on August 8, but rather waited until a series of transactions had transpired. Appellants cite no authority for the proposition that introduction of this kind of evidence constitutes reversible error. The district judge has wide discretion in assessing the legal relevance of evidence. *See, e. g., United States v. Johnson,* 5 Cir., 1978, 585 F.2d 119, 125; *Wright v. Hartford Accident and Indemnity Co.,* 5 Cir., 1978, 580 F.2d 809, 810. Additionally, appellants have demonstrated no undue prejudice from the statements. The testimony did not specifically mention appellants, but rather discussed the DEA's general reasons for continuing an investigation which include discovering the identity

of the defendant's supplier and obtaining leads for further investigations. Even assuming that the testimony was only marginally relevant to the case at hand, the testimony was not so prejudicial as to warrant reversal.

The convictions are therefore

AFFIRMED.