Ed McCall was indicted and convicted for the unlawful sale of Preludin in violation of Alabama's Controlled Substances Act. Alabama Code 1975, § 20-2-70. Sentence was twelve years imprisonment and a $7,500 fine.
 I
In 1981, the defendant pled guilty to an indictment charging the unlawful sale of "Preludin". Subsequently, that conviction was overturned in 1984 when the circuit court granted a petition for writ of error coram nobis and ordered a new trial. In April of 1984, the defendant was "re-indicted" for the sale of "phenmetrazine". Subsequently, the trial court dismissed this "re-indictment" because of the statute of limitations. The defendant argues that the "re-indictment" in 1984 constituted an abandonment of the indictment returned in 1981. The first two issues raised on this appeal center on the fact that Preludin is the trade name for phenmetrazine which is listed as a Schedule III controlled substance. Alabama Code 1975, §20-2-27 (a)(1)(b). The drug "Preludin" does not appear in any schedule of controlled substances.
Before the defendant's trial, an assistant district attorney informed defense counsel by letter that the 1981 indictments, including the one involved here, would have to be either amended or new indictments returned.
 "Anticipating your usual pre-trial motions and demurrer, there are several matters of which you should be aware. It will be necessary to either amend the existing indictments with the consent of the defendant or to present the cases to the June grand jury for re-indictment. The indictments we now have allege the drugs preludin and desoxyn using their *Page 1377 
trade names rather than their respective generic names of phenmetrazine and methamphetamine hydrochloride. For your benefit, we will also allege the date of each sale in the amended or new indictments."
"An indictment is not subject to abatement because another charge is pending against the defendant for the same offense.Howard v. State, 29 Ala. App. 199, 194 So. 853, cert. denied,239 Ala. 274, 194 So. 857 (1940). `It is generally held that a grand jury may find a valid indictment notwithstanding another indictment . . . against accused for the same offense. . . .' 42 C.J.S. Indictments Information § 34 (a) (1944)." Clementsv. State, 390 So.2d 1131, 1133 (Ala.Cr.App.), cert. denied,390 So.2d 1136 (Ala. 1980). "The pendency of the two indictments charging the same offense is no ground for abatement of either prosecution." Howard, 29 Ala. App. at 202, 194 So. at 856 (one indictment returned in 1914, the other in 1937).
The defendant had previously pled guilty to the first indictment. Both indictments were apparently the same, the second indictment not being in the record on appeal, except that in one the controlled substance was identified by its trade name while the other indictment employed the generic name.
We do not view the re-indictment of the defendant as an abandonment by the State of its original prosecution, especially since the purpose of the attempted re-indictment was merely to provide the defendant with more particular and specific notice of the original charge. The original indictment was never dismissed or nol-prossed and, as stated above, the existence of a second indictment would not have any effect upon the first.
 II
The indictment did charge an offense despite the fact that the controlled substance was described as Preludin, a trade name, rather than phenmetrazine, the generic name for the same drug. The defendant argues that, in charging the sale of a "registered trade mark name of a tablet produced by a pharmaceutical company" instead of describing the controlled substance the way it is listed on the schedule of controlled substances, the indictment failed to state an essential element of the offense and failed to advise the defendant of the exact nature of the offense charged.
"An indictment or information in a prosecution involving narcotics or dangerous drugs must be sufficiently definite with respect to the particular substance involved to enable accused to know with what he is charged." 28 C.J.S.Supp. Drugs Narcotics § 185 (1974).
In Harbor v. State, 465 So.2d 455, 458 (Ala.Cr.App. 1984), cert. quashed, 465 So.2d 460 (Ala. 1985), this Court held that an indictment charging the illegal possession of "Darvon" was not defective because it did not contain the chemical name dextropropoxythene, where a toxicologist testified that Darvon and dextropropoxythene are one and the same drug.
We are not persuaded that Harbor, supra, is due to be overruled, especially in this case, although there is authority that supports the contrary. See Ex parte Holbrook,609 S.W.2d 541, 542-43 (Tex.Cr.App. 1980) (the indictment for fraudulently attempting to obtain possession of "a controlled substance, namely: Preludin" was found invalid because: "The instant indictment should have alleged what facts must be proved about Preludin that make it a controlled substance, and the failure to do so rendered the indictment fundamentally defective").
At the defendant's trial, there was testimony that "Preludin is a brand name for a specific drug, phenmetrazine." * * * "[P]henmetrazine and preludin denote the same preparation, the same drug preparation." At one point in the trial, defense counsel stated, "It's pretty clear that Preludin's the trade name for Phenmetrazine." *Page 1378 
Phenmetrazine is listed as a Schedule III controlled substance. Alabama Code 1975, § 20-2-27 (a)(1)(b). The word "Preludin" does not appear on the list of controlled substances. Section 20-2-21 of the Controlled Substances Act provides that "[t]he controlled substances listed or to be listed in the schedules . . . are included by whatever official, common, usual, chemical or trade name designated."
In finding no prejudice to the defendant in this matter, we are guided by the commonsense legislative command that "[w]ords used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning." Alabama Code 1975, § 15-8-21. While we find no error, we are mindful of Chief Justice Brickell's admonition in Sparrenberger v. State, 53 Ala. 481,482-83, 484-85 (1875):
 "It is a well established rule of criminal pleading, that if an offense is purely statutory, the indictment must pursue the words of the statute, so as to bring the defendant precisely within it. There is much conflict of authority as to the precision which must be observed in following the language of the statute. Some authorities require that the exact words of the statute must be employed. Others regard the rule as satisfied if words substantially the same or equivalent — of the same legal import with the words of the statute — are used. This is the rule which has prevailed in this court from an early day."
* * * * * *
 "It is to be regretted that inaccuracies of this kind should creep in (vitiating?) criminal convictions. It can be avoided by pursuing the words of the statute, when these fully describe the offense. If words are substituted for them, the pleader should be careful to select such as are equivalent in signification to the statutory words." (Material in parentheses appears in original.)
Since the evidence demonstrates that Preludin is phenmetrazine, this Court affirms the action of the trial court in denying the defendant's motion to dismiss the indictment because it "failed to state an offense at law," and failed to apprise with reasonable certainty the defendant of the nature of the accusation.
 III
An indictment charging the sale of a controlled substance is not fatally defective for failing to state the date of the alleged offense. Tucker v. State, 429 So.2d 1165, 1169
(Ala.Cr.App. 1983). See also Alabama Code 1975, § 15-8-30. Although the trial court denied the defendant's motion to dismiss, the court also ordered the prosecutor to "formally advise" the defendant of "the date and so forth of the transaction involved in the case you wish to try."
 IV
The defendant alleges that the trial court erred in failing to compel the State to disclose the name and last known address of a "material witness" and "active participant" to the sale of the controlled substance.
Mobile County Sheriff's Deputy Lark Dodd testified that, on the evening of January 21, 1981, she went to a house and "was led into the residence by a man that was introduced to me as Ed," and that she told Ed, the defendant, that she had some jewelry that she wanted "to swap him to buy some drugs with." In exchange for five gold rings, the defendant gave Deputy Dodd four Preludin tablets.
The informant's existence was initially brought out on cross examination of Deputy Dodd by defense counsel. The Deputy testified that a man named "John" introduced her to the defendant. She stated that John "was present at the introduction, present during me stating I wanted to swap some jewelry for some pills, and that was it. He was not present during my transaction with Mr. McCall." The undisputed evidence is that, at the time the *Page 1379 
"buy" was made, John was in an "entry room" and Deputy Dodd and the defendant were in a back bedroom with the door closed.
United States Customs Agent James T. Wyatt, Jr. testified that Deputy Dodd was first introduced to John shortly before purchasing the drugs from the defendant. John was a confidential informant but neither Wyatt nor Dodd knew John's last name, his last known address or how he could be located.
The trial court denied the defendant's request for the disclosure of "John's" name, identity, and address finding that "John, whoever he was, was not present at the time of the buy" and that "they don't know how to find him, they don't know what his last name is, and that's all I know to do is to call it off right there." * * * "Well, he has represented to me — Mr. Harrison [the prosecutor] on behalf of the State of Alabama — and the other witnesses have said they have no idea what his last name is or how to find him and all, so I must deny your motion. I don't know what I'd order them to do."
At trial, the defendant did not testify nor produce any evidence. In arguing for the disclosure of the informant's identity, defense counsel stated: "The defense, as I've stated in my opening statement to the jury, is entrapment. It is an essential to that defense that everything that was said and done at the time the undercover agent [Dodd], who was a witness on the stand, approached and met my client be produced."
The general rule of the accused's right to the disclosure of the identity of an informant on the issue of guilt or innocence is stated in Annot., 76 A.L.R.2d 262, 270 (1961):
 "Generally speaking, an accused's right to disclosure depends upon whether such disclosure is material to his defense or the disposition of the case. Disclosure is ordinarily material to the defense where the informer was a witness to the transaction with which the accused is charged, or participated in that transaction as a decoy or otherwise. On the other hand, disclosure is ordinarily not material where the informer was not a witness to the transaction charged, or did not participate in the transaction, being a `mere' informer who only supplied a `lead' to law enforcement officers for their investigation. It is clear, however, that there may be situations in which even a `mere' informer may be a material witness for the defense."
An informant's identity is required when the informant and the accused were the sole participants in the criminal transaction and the informant was the only witness in a position to amplify or contradict the testimony of the prosecution witnesses. Roviaro v. United States, 353 U.S. 53,77 S.Ct. 623, 1 L.Ed.2d 639 (1957). See also 33 Am.Jur.P.O.F.2d 549 (1983); 21A Am.Jur.2d Criminal Law §§ 778-780, 1002-1005 (1981).
Entrapment is a defense which may likely merit the disclosure of informant's identity. Roviaro, supra; 33 Am.Jur.P.O.F.2d at 556, n. 8. Although defense counsel claimed that the identity of the confidential informant was necessary in order to support his defense of entrapment ("I wasn't able to prove entrapment because I didn't have John."), there was no evidence of entrapment presented. Under these circumstances, the defendant was not entitled to disclosure. "[T]he mere allegation of entrapment is not sufficient in and of itself to force disclosure." United States v. Gonzales, 606 F.2d 70, 75 (5th Cir. 1979).
 "Our consideration of the relationship between entrapment and disclosure is aided by a clear understanding of the nature of the entrapment defense. Entrapment is an affirmative defense in that the defendant must present some evidence of entrapment before the issue is properly raised. See, e.g., United States v. Buckley, *Page 1380 
5 Cir., 1978, 586 F.2d 498, 501, cert. denied, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); United States v. Timberlake, 5 Cir., 1977, 559 F.2d 1375, 1379; United States v. Ashley, 5 Cir., 555 F.2d 462, 466-67, cert. denied sub nom. Leveritte v. United States, 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977). Thus, the defendant has the burden of production in that he must bear `the initial burden of going forward with evidence of governmental involvement and inducement.' United States v. Wolffs, 5 Cir., 1979, 594 F.2d 77, 80. In this regard, the defendant must produce `some evidence, but more than a scintilla, that [he was] induced to commit the offense.' United States v. Groessel, 5 Cir., 440 F.2d 602, 606, cert. denied, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); Wolffs, supra, 594 F.2d at 81. This initial burden on the defendant to produce some evidence of entrapment has important ramifications for disclosure of an informant's identity under Roviaro. Unless some evidence of entrapment is adduced by the defendant, thereby properly raising the defense, disclosure would be unjustifiable. As stated in Alvarez [v. United States, 525 F.2d 980
(5th Cir. 1976)], it is `defendant's responsibility to make an initial proffer on his entrapment defense before Roviaro's balancing process could be invoked.' Alvarez, supra, 525 F.2d at 982. Disclosure based upon mere speculation as to the relevancy of an informant's testimony is inappropriate given defendant's burden of production. [United States v.] Hodges, supra, 493 F.2d [11] at 12 [(5th Cir. 1974)]. See [United States v.] Hansen, supra, 569 F.2d [406] at 409 [(5th Cir. 1978)]." Gonzales, 606 F.2d at 75.
Because there is not "even an arguable suggestion of entrapment" contained in the record, Gonzales, 606 F.2d at 76, we find no error in the prosecution's failure to produce the informant's identity.
 V
The trial judge charged the jury on the law of entrapment even though he did not consider it "appropriate": "I don't know that I need to [charge on entrapment], but I'm going to do it anyway." We do not consider Deputy Dodd's testimony that the defendant "usually didn't swap jewelry for drugs" evidence of entrapment because of the context in which the statement was made. The Deputy testified that "he didn't know the value of gold, so he didn't know how to swap me out for the drugs for the rings and that he usually didn't swap jewelry for drugs because if the police came in, then they could trace it as stolen." The fact that the defendant usually did not swap jewelry for drugs implies that he had on occasion done so, indicating a predisposition to commit the charged offense and negating entrapment.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.