BASCHAB, Judge,
dissenting.
In this case, the indictment against the appellant alleged that she
“did commit the crime of Unlawful Manufacture of a Controlled Substance in the second degree by, To-Wit: possessing precursor substances as determined in section 20-2-181 of the Code of Alabama 1975, in any amount with the intent to unlawfully manufacture a controlled substance, To-Wit: Methamphetamine, in violation of, Section 13A-12-217, of the Code o[f] Alabama, Against the Peace and dignity of the State of Alabama.”
(C.R. 17.)
“A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
[[Image here]]
“(2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.”
§ 13A-12-217(a), Ala.Code 1975. Section 20-2-181, Ala.Code 1975, provides:
“(a) The Board of Pharmacy shall, within one year of July 29, 1991, designate by rule listed precursor chemicals.
“(b) The Board of Pharmacy may subsequently by rule add chemicals as listed precursor chemicals following the criteria set forth in subdivision (2) of Section 20-2-180, and may also by rule delete any substance previously named as a listed precursor chemical. In no event shall a chemical also be designated as a listed precursor chemical if it has been determined to be a controlled substance or an immediate precursor chemical pursuant to the Alabama Uniform Controlled Substances Act, Section 20-2-1 et seq.
“(c) If any chemical is designated or deleted as a listed precursor chemical under federal law and notice thereof is given to the Board of Pharmacy, the board shall similarly list or delete the substance under this article after the expiration of 30 days from publication in the federal register of a final rule or order designating or deleting such substance as a listed precursor chemical, unless, within 30 days from publication in the federal register of the final rule or order, the board objects to the designation or deletion. In that case, the board shall publish the reasons for objection in the Alabama Administrative Monthly and shall afford all interested parties an opportunity to submit written comments and to be heard. At the conclusion of *1105 the hearing and the comment period, the State Board of Pharmacy shall publish its decision, which shall be final unless altered by statute. Upon publication of an objection to the designation or deletion by the board, the designation or deletion is stayed until the board publishes its decision. Notwithstanding the provisions of the Alabama Administrative Procedure Act, Sections 41-22-1 through 41-22-27, no further rulemak-ing or administrative proceedings shall be required of the board with respect to the designation or deletion of substances similarly designated or deleted under federal law.
“(d) Until the Board of Pharmacy adopts a rule designating listed precursor chemicals, as required by subsection (a), the following chemicals or substances are hereby deemed listed precursor chemicals:
“(1) Acetic anhydride;
“(2) Anthranilic acid and its salts;
“(3) Benzyl cyanide;
“(4) Ephedrine, its salts, optical isomers, and salts of optical isomers;
“(5) Ergonovine and its salts;
“(6) Ergotamine and its salts;
“(7) Hydriodic acid;
“(8) Isosafrol;
“(9) Methylamine;
“(10) N-Acetylanthranilic acid and its salts;
“(11) Norpseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(12) Phenylacetic acid and its salts;
“(13) Phenylpropanolamine, its salts, optical isomers, and salts of optical isomers;
“(14) Piperidine and its salts;
“(15) Pseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(16) Safrole; and
“(17) 3, 4-Methylenedioxyphenyl-2-propanone.”
Section 20-2-180(2), Ala.Code 1975, defines a “listed precursor chemical” as “[a] chemical substance specifically designated as such by the Alabama State Board of Pharmacy, that, in addition to legitimate uses, is used in the unlawful manufacture of a controlled substance or controlled substances.”
“ ‘An indictment or information in a prosecution involving narcotics or dangerous drugs must be sufficiently definite with respect to the particular substance involved to enable accused to know with what he is charged.’ 28 C.J.S. Supp. Drugs & Narcotics § 185 (1974).”
McCall v. State, 487 So.2d 1375, 1377 (Ala. Crim.App.1986). See also Vann v. State, 44 Ala.App. 664, 665, 219 So.2d 649, 650 (1969) (holding that an indictment for possessing depressant and stimulant drugs was “insufficient for failure to name the particular drug possessed by the defendant”).
“An indictment must allege all the elements of the offense charged, and must also sufficiently apprise the accused of what he must be prepared to defend. Fields v. State, 494 So.2d 477, 479 (Ala.Cr.App.1986); Hardy v. State, 409 So.2d 996, 1001 (Ala.Cr.App.1982). Indictment forms for most criminal offenses are set out in § 15-8-150, Code of Alabama 1975; however, no indictment form for child abuse is contained in this section.
“ ‘If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute ere- *1106 ating the offense is generally valid. Worrell v. State, Ala. Cr.App., 357 So.2d 373, cert. denied, Ala., 357 So.2d 378 (1978); Manson v. State, Ala. Cr. App., 349 So.2d 67, cert. denied, Ala., 349 So.2d 86 (1977); Code § 15-8-23.
‘“Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambers v. State, Ala. Cr.App., 364 So.2d 416, cert. denied, Ala., 364 So.2d 420 (1978). See also: Andrews v. State, Ala. Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977).’
“Harrison v. State, 384 So.2d 641, 643 (Ala.Cr.App.1980).” .
Hewlett v. State, 520 So.2d 200, 204 (Ala. Crim.App.1987) (emphasis added).
Section 15-8-150, Ala.Code 1975, does not include an indictment form for second-degree unlawful manufacture of a controlled substance. Therefore, we must determine whether the indictment in this case apprised the appellant of the particular act or means by which she committed the offense of second-degree unlawful manufacture of a controlled substance. The indictment alleged that the appellant possessed “precursor substances as determined in section 20-2-181 of the Code of Alabama 1975, with the intent to unlawfully manufacture a controlled substance, To-Wit: Methamphetamine.” (C.R. 17.) However, it does not name the precursor substance or substances she was charged with possessing.
The majority asserts that the indictment tracks the language of § 13A-12-217, Ala. Code 1975; that § 13A-12-217, Ala.Code 1975, prescribes with definiteness the elements of the offense; that the appellant could have moved for a more definite statement; that any defect in the indictment would, at most, render it voidable; and that, because any defect would not render the indictment void, it did not implicate the jurisdiction of the trial court.
I agree that, in certain instances, an indictment that substantially follows the language of the statute violated is sufficient even if it incorporates words and phrases that are defined in other statutes without further clarification of those incorporated words or phrases. In those instances, the words or phrases are defined in statutes that provide specific, finite definitions for the incorporated terms. See, e.g., §§ 13A-6-61 through 13A-6-67, Ala. Code 1975 (incorporating terms that are defined in § 13A-6-60, Ala.Code 1975); §§ 13A-8-3 through 13A-8-5, Ala.Code 1975 (incorporating the definition of theft set forth in § 13A-8-2, Ala.Code 1975); §§ 13A-8-41 and 13A-8-42, Ala.Code 1975 (incorporating the definition of third-degree robbery in § 13A-8-43, Ala.Code 1975).
Section 20-2-181, Ala.Code 1975, does not provide a finite definition for the term “precursor substances.” Rather, it provides that the Alabama State Board of Pharmacy (“the Board”) is responsible for developing a list of precursor substances; sets forth criteria for the Board to use in determining whether to add or delete chemicals from the list of precursor substances; provides a procedure for the Board to follow in the event federal law designates or deletes a listed precursor chemical; and sets forth an initial list of precursor substances. Because the term “precursor substances” has an evolving definition and because that complete definition is not necessarily included in § 20- *1107 2-181, Ala.Code 1975, the mere use of the term “precursor substances” and a reference to § 20-2-181, Ala.Code 1975, in an indictment do not adequately put a defendant on notice of which prohibited items he or she is charged with possessing. Rather, the name or names of the specific precursor substance(s) involved would be an essential element that must be alleged in the indictment.
Because the indictment in this case did not allege the specific precursor substance(s) the appellant was charged with possessing, it did not allege all of the essential elements of the offense of second-degree unlawful manufacture of a controlled substance. Therefore, the indictment against the appellant and the resulting conviction are void.
Moreover, the events that took place during the appellant’s trial emphasize the dangers present when a defendant proceeds to trial on an indictment that does not adequately set forth the elements of the offense. In this case, Investigator Annie Henderson of the Geneva County Sheriffs Department testified that, during the search of the appellant’s vehicle, she found numerous items containing methamphetamine; “a coffee filter that contained a white powder and I believe that came back to pseudoephedrine”; and a receipt for the purchase of pseudoephedrine. (R. 36.) However, she subsequently testified that she submitted a coffee filter to the Alabama Department of Forensic Sciences (“ADFS”) and that the forensic analysis indicated that the coffee filter contained .26 grams of methamphetamine.
The two certificates of analysis that were admitted into evidence indicate that “a coffee filter holding off-white powder” was submitted to the ADFS; that that powder was .26 grams of methamphetamine; and that the remaining substances that were analyzed contained methamphetamine. The certificates of analysis do not indicate that any substance was found to contain pseudoephedrine.
Investigator Tony Helms of the Geneva County Sheriffs Department testified that he was the Commander of the Geneva County Drug Task Force; that he searched the appellant’s vehicle; that, in a blue container, he found tincture of iodine, acetone, Pyrex dishes, and a bag that contained trash items such as used coffee filters; a plastic bag that contained a coffee filter with iodine stains; rubber gloves; a stirring stick; a paper towel with iodine stains; a toolbox that had the name “Rodney” on it and that contained a propane torch; a turkey baster; and a cigarette case that had a receipt for the purchase of acetone. He also testified as to the significance of each of those items with regard to the manufacture of methamphetamine and that he determined that the items he found constituted a mobile lab scene. Subsequently, the following occurred:
“[PROSECUTOR]: The chemicals you listed, are those what we call precursor chemicals?
“[HELMS]: Yes.
“[PROSECUTOR]: Is that what we refer to as chemicals used to prepare meth?
“[HELMS]: Yes.
“[PROSECUTOR]: Precursor chemicals?
“[HELMS]: Yes, sir.”
(R. 68.)
Finally, during its oral charge, the trial court instructed the jury as follows:
“A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following: Possess precursor substances as determined in Section 20-2-181, in any *1108 amount with the intent to unlawfully manufacture a controlled substance.
“In this case, the State must prove as to the unlawful manufacturing of a controlled substance in the 2nd degree the following: The State must prove that the Defendant possessed precursor substances, in any amount, and that she possessed them with the intent to unlawfully manufacture a controlled substance. So, it would be for you to determine from the evidence whether or not the Defendant possessed some precursor chemicals, precursor substances, and that she possessed them with the intent to unlawfully manufacture a controlled substance.”
(R. 85.) However, the trial court did not instruct the jury as to what substances would constitute precursor substances. Rather, the jury was presented with only Helms’ testimony that the chemicals he found in the appellant’s vehicle were precursor chemicals. Further, the State did not establish that any of the items that were found in the appellant’s vehicle would constitute a precursor substance pursuant to the list set forth in § 20-2-181, Ala. Code 1975, or any subsequent lists promulgated by the Board. Although Henderson testified that she believed that the substance in the coffee filter came back to be pseudoephedrine, forensic testing indicated that the white powder that was in the coffee filter was actually methamphetamine.
The nature of the statute describing precursor substances and the events that occurred during the appellant’s trial emphasize the necessity of actually naming the specific precursor substance or substances a defendant is charged with possessing. They also emphasize the fact that the indictment in this case did not adequately apprise the appellant of the particular act or means by which she committed the offense of second-degree unlawful manufacture of a controlled substance.
Because the indictment against the appellant and the resulting conviction were void, I must respectfully dissent.