[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15956
_____

D.C. Docket No. 1:11-cr-20346-MGC-21


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS ALFONSO ALMANZA SANCHEZ,
a.k.a. Caliche,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 3, 2015)

Before WILLIAM PRYOR, and JORDAN, Circuit Judges, and JONES,[*] District
Judge.

_____

[*] Honorable Steve C. Jones, United States District Judge for the Northern District of Georgia,
sitting by designation.

PER CURIAM:

Carlos Alfonso Almanza Sanchez and various co-conspirators planned to use a 90-foot submarine—which cost $6,000,000 to build and was capable of carrying 3,000 kilograms of cocaine—to transport drugs to the United States. For his part in the scheme, Mr. Almanza Sanchez was convicted of conspiracy to manufacture and distribute cocaine, knowing that the cocaine was bound for the United States, in violation of 21 U.S.C. §§ 959(a)(2) and 963. The district court sentenced him to 135 months' imprisonment.

Mr. Almanza Sanchez appeals, asserting a number of challenges to his conviction. After review of the record, and with the benefit of oral argument, we affirm.

## I

Oscar Agusto Gutierrez Garcia, a Colombian naval officer, recruited Mr. Almanza Sanchez, a veteran of the Colombian Navy, to take part in the cocaine-smuggling scheme. Mr. Gutierrez Garcia initially recruited Mr. Almanza Sanchez to serve as a mechanic on a submarine based in Ecuador, promising him $50,000 for his services. Before it could get underway, however, the Ecuadorian submarine was seized by the Ecuadorian army. Mr. Almanza Sanchez then joined the crew of a second submarine based in Colombia and agreed to serve as its co-captain in exchange for $100,000. Colombian law enforcement officials seized that

2

submarine and apprehended Mr. Almanza Sanchez, along with several other individuals, before the submarine set off on its voyage.  The Colombian authorities found 3,000 kilograms of cocaine and a weapons cache not far from where the submarine was seized.

A federal grand jury charged Mr. Almanza Sanchez with conspiracy to manufacture and distribute five kilograms or more of cocaine, knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a)(2), 960(b)(2)(B), and 963.  After being extradited to the United States, Mr. Almanza Sanchez was tried by a jury and convicted on the sole charge in the indictment.  At trial, one of the most contested issues was whether Mr. Almanza Sanchez knew that the drugs were intended to be imported into the United States.

## II

On appeal, Mr. Almanza Sanchez contends that the district court erred by admitting expert testimony as to drug trafficking routes; that the district court erred by admitting hearsay testimony as to the training Colombian sailors receive about drug trafficking routes; that 21 U.S.C. §§ 959(a)(2) and 963 do not apply extraterritorially; and that cumulative error, including improper comments by the government during closing argument, denied him a fair trial.

**A**

We first address Mr. Almanza Sanchez's argument that the district court lacked subject-matter jurisdiction to try him because 21 U.S.C. §§ 959(a)(2) and 963 do not apply extraterritorially.  This argument is foreclosed by binding circuit precedent, as we have held that §§ 959(a)(2) and 963 apply extraterritorially.  *See United States v. Caicedo-Asprilla*, 632 F.2d 1161, 1166 (5th Cir. 1980) (addressing § 959(2)—the predecessor to § 959(a)(2)—and § 963).[1]

**B**

Mr. Almanza Sanchez next argues that the district court erred by admitting expert testimony by Agent Erik Holm of the United States Coast Guard relating to drug trafficking routes on the Pacific Ocean.  We disagree.

We review a district court's decision to admit expert testimony for an abuse of discretion.  *See United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).  And we have explained that "an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business."  *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (internal quotation marks omitted).

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions by the former Fifth Circuit handed down before October 1, 1981.

The government called Agent Holm as an expert witness to testify about drug trafficking routes from South America to Mexico and the United States via the Pacific Ocean.  Mr. Almanza Sanchez objected to Agent Holm's testimony, arguing that it was cumulative, not helpful to the jury, and unfairly prejudicial. After holding a *Daubert* hearing,[2] the district court overruled Mr. Almanza Sanchez's objections on the condition that Agent Holm testify only as to drug trafficking routes, and not as to Mr. Almanza Sanchez's knowledge about the cocaine's intended destination.

The record establishes that Agent Holm served on active duty with the United States Coast Guard for more than 22 years and had extensive experience investigating drug trafficking in the eastern Pacific.  Agent Holm's experience included working with confidential informants and interviewing drug traffickers, and he had previously testified as an expert on semi-submersible drug trafficking operations.  Agent Holm also indicated that he was familiar with the practices of cocaine smugglers operating out of South and Central America.  He explained that the majority of cocaine smuggled through the eastern Pacific towards Central America or Mexico ends up in either the United States or Mexico.

Agent Holm had significant experience and knowledge about the drug trafficking routes from South and Central America to the United States.  His

---

[2] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

opinions were sufficiently reliable, and his testimony could have helped the jury understand the evidence. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) ("[T]he proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact.").

Mr. Almanza Sanchez also argues that Agent Holm's testimony was cumulative and unfairly prejudicial. This argument also fails. The testimony was not cumulative because Agent Holm addressed the routes that drug traffickers generally use. The testimony from other witnesses addressed the training received by those serving in the Colombian Navy and the specific smuggling routes that Mr. Almanza Sanchez and his co-conspirators intended to use.

As for Mr. Almanza Sanchez's claim that Agent Holm's testimony was unfairly prejudicial, the district court ensured this was not the case by limiting his testimony to drug trafficking routes generally. Agent Holm did not testify as to Mr. Almanza Sanchez's personal knowledge or the particular submarine operations in this case.

In sum, we conclude that the district court did not abuse its discretion by allowing Agent Holm to testify as an expert.

## C

Mr. Almanza Sanchez next contends that the district court abused its discretion by allowing Wilfer Torres and Rafael Olaya Quintero to testify that sailors in the Colombian Navy, like Mr. Almanza Sanchez, are taught that most cocaine entering the eastern Pacific from Colombia is bound for the United States. Mr. Almanza Sanchez argues that this testimony was inadmissible hearsay, but we again disagree.

"We review a district court's hearsay ruling for abuse of discretion." *United States v. Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006). "An out-of-court statement is considered hearsay only if the witness (other than the declarant) is testifying to the statement in order to prove or demonstrate the truth of that statement." *United States v. Fox*, 613 F.2d 99, 101 (5th Cir. 1980). Thus, "[s]tatements not offered for the truth of the matter asserted are not hearsay." *United States v. Gonzales*, 606 F.2d 70, 77 (5th Cir. 1979).

Mr. Torres, a lieutenant in the Colombian Navy, testified that he was stationed at the Guapi Base for two years and that during training sailors received information about drug trafficking routes. Specifically, Mr. Torres testified that Colombian sailors are instructed that drug traffickers use rivers in Colombia to enter the Pacific Ocean and head north to Mexico, the United States, the Dominican Republic, and other destinations.

7

Mr. Olaya Quintero, a Marine Lieutenant Colonel in the Colombian Navy and a former commandant at the Guapi Base, also testified for the government. He stated that sailors at the Guapi Base are instructed about drug trafficking routes and that the training at all Colombian naval bases along the Pacific Ocean is the same. Mr. Quintero also testified that sailors learn that the drugs go through Panama, Central America, and Mexico and that when they reach a certain size, the drug shipments always end up in the United States. Mr. Quintero was not at the Guapi Base when Mr. Almanza Sanchez was stationed there, but he testified that the training at Colombian naval bases had been the same for many years.

The testimony of Messrs. Torres and Quintero was not offered to prove the truth of the matter asserted—i.e., that most drugs smuggled on the Pacific Ocean from Colombia are bound for the United States. Rather, their testimony was offered to demonstrate the type of training members of the Colombian navy received at the Guapi Base with regard to drug trafficking routes. From this testimony, the jury could reasonably infer that, as a sailor in the Colombian Navy, Mr. Almanza Sanchez received the same training, and thus, it was more likely than not that he knew about drug trafficking routes in the eastern Pacific.

The district court did not abuse its discretion by admitting the testimony of Messrs. Torres and Quintero.

8

**D**

At the close of trial, the district court instructed the jury that it need not find that Mr. Almanza Sanchez knew all the details of the conspiracy in order to convict him of the charged offense. The government referred to this portion of the jury instruction during its closing argument. Mr. Almanza Sanchez argues that, by doing so, the government diminished its burden of proof as to whether he knew that the cocaine was intended for the United States, and thus deprived him of a fair trial. We find no merit to this argument.

Mr. Almanza Sanchez's contention about the government's closing argument is distorted. When the government stated that Mr. Almanza Sanchez could be convicted of conspiracy without full knowledge of all the details of the unlawful plan to transport cocaine to the United States, *see* D.E. 635 at 127:10-11, the government was not implying that Mr. Almanza Sanchez could be convicted without knowledge that the cocaine was bound for the United States. Rather, it was driving home the point that, as the district court accurately explained, Mr. Almanza Sanchez did not have to know every detail of the plan to be convicted for conspiring to commit the crime. *See United States v. Knowles*, 66 F.3d 1146, 1159 (11th Cir. 1995) ("A conspirator need not know all of the members or details of a conspiracy to be held responsible as a co-conspirator.").

9

With respect to Mr. Almanza Sanchez's knowledge about the intended destination of the cocaine, the government explained that it did not have to prove that Mr. Almanza Sanchez had a "specific conversation" with someone as to the intended destination of the drugs in order to prove that he knew the drugs were bound for the United States. *See* D.E. 635 at 163:3-8. Rather, the jurors could draw "reasonable inferences," based on all the evidence, that Mr. Almanza Sanchez knew the drugs were headed for the United States. *Id.* at 9-12. That argument was not improper.

Mr. Almanza Sanchez's attempt to cherry-pick certain statements made by the government during closing arguments is unavailing. We have reviewed the record and find no error, plain or otherwise, in the government's arguments.

## E

Finally, Mr. Almanza Sanchez argues that he was denied a fair trial based on cumulative error. We have stated, however, that "[w]here there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir. 2011). Finding no error here, we reject Mr. Almanza Sanchez's contention of cumulative error.

## III

For the forgoing reasons, we affirm Mr. Almanza Sanchez's conviction.

**AFFIRMED.**

10